FUNTIME, INC., APPELLANT, *v.* WILKINS, TAX COMMR., APPELLEE.

[Cite as *Funtime, Inc. v. Wilkins,*
105 Ohio St.3d 74, 2004-Ohio-6890.]

(No. 2003–0622—Submitted October 13, 2004—Decided December 22, 2004.)

FRANCIS E. SWEENEY, SR., J.

{¶ 1} This case concerns whether certain property owned by Funtime, Inc. should be classified as real or personal property. For the reasons set forth below, we find that the property should be classified as personal property.

{¶ 2} During the 1995–1997 audit period, appellant, Funtime, Inc. ("Funtime"), owned and operated what was then called Geauga Lake Amusement Park. This appeal involves three rides located in the amusement park: Grizzly Run, Mind Eraser, and Skyscraper. In addition, the tax status of the station houses for the Grizzly Run and Mind Eraser rides is in question.

{¶ 3} Grizzly Run (a.k.a. River Rapids) is a water ride intended to simulate a white-water rafting experience. Funtime contracted with High–Tech Pools, Inc. to build the sides and bottom of the concrete flumes. In addition, Funtime contracted with Strait Bilt Construction Company to add a finish to the flumes and surrounding areas to simulate rocks and boulders. The Grizzly Run ride sits directly on the ground, and the ride cannot be disassembled and moved.

{¶ 4} Mind Eraser is basically a roller coaster. Funtime contracted with Industrial First, Inc. to erect Mind Eraser. Mind Eraser is affixed to concrete footings that are embedded in the ground, and the ride cannot be moved.

{¶ 5} The Grizzly Run and Mind Eraser station houses are places from which patrons enter and exit Grizzly Run and Mind Eraser.

{¶ 6} Skyscraper consists of a doughnut-shaped glass enclosure that holds customers and rotates as it is raised around a tower. Millar Elevator Service provided repair services for Skyscraper.

{¶ 7} The Tax Commissioner issued a use-tax assessment against Funtime, classifying Grizzly Run, Mind Eraser, and Skyscraper as personal property. The

portion of the assessment relating to Grizzly Run and Mind Eraser and their station houses was based on the amounts billed by the construction contractors who built or installed the rides. The portion of the assessment relating to Skyscraper was based on the amounts billed by the contractor who repaired the ride.

{¶ 8} The Tax Commissioner's assessment was affirmed by the Board of Tax Appeals ("BTA"), which found that the rides were business fixtures and therefore personal property.

{¶ 9} This cause is now before the court upon an appeal as of right.

{¶ 10} The use-tax assessment made against Funtime was made under R.C. 5741.02, which provides that the use tax is applicable to "the storage, use, or other consumption in this state of tangible personal property or the benefit realized in this state of any service provided." R.C. 5741.02(A)(1). However, R.C. 5741.02(C)(2) excepts from the use tax the acquisition of "tangible personal property or services, the acquisition of which, if made in Ohio, would be a sale not subject" to the sales tax.

{¶ 11} Funtime contends that it is not liable for the assessment made by the Tax Commissioner against the construction contracts for Grizzly Run and Mind Eraser and their associated stations because these rides and stations are real property, and sales-tax provision R.C. 5739.01(B)(5) excepts the construction contracts for real property from the definition of "sale" for sales-tax purposes, and, therefore, also from use tax: "[A] construction contract pursuant to which tangible personal property is or is to be incorporated into a structure or improvement on and becoming a part of real property is not a sale of such tangible personal property. The construction contractor is the consumer of such tangible personal property * * *." Thus, Funtime contends that if there is a tax liability relating to the construction or installation of Grizzly Run or Mind Eraser or their stations, it is the contractors' and not Funtime's.

{¶ 12} R.C. 5741.02(A)(1) levies a use tax on the benefit realized in this state of any service provided. Funtime contends that it is not liable for use tax on the amounts billed by Millar Elevator Service for repairs to Skyscraper because Skyscraper is real property. Use-tax provision R.C. 5741.01(M) defines the term "providing a service" by citing R.C. 5739.01(X), the sales-tax provision. R.C. 5739.01 includes in the definition of "sale" all transactions by which "[a]n item of tangible personal property is or is to be repaired, except property, the purchase of which would not be subject to the tax imposed by section 5739.02 of the Revised Code." R.C. 5739.01(B)(3)(a). Thus, repairs to nonexempt tangible personal property are subject to sales tax and, therefore, use tax. However, repairs to real property are not subject to sales or use tax.

{¶ 13} The history of this court's decisions classifying property as real or personal begins with a nontax case, *Teaff v. Hewitt* (1853), 1 Ohio St. 511, 1853 WL 54. *Teaff* involved a dispute between creditors of a manufacturer and a mortgagee concerning whether machinery in the mortgagor's possession was personal or real property. The court set forth three criteria for determining whether an item was a fixture (real property) or personalty: (1) actual annexation to the realty or something appurtenant thereto, (2) appropriation to the use or purpose of that part of the realty with which it is connected, and (3) the intention of the party making the annexation to make a permanent accession to the freehold.

{¶ 14} After personal property and real property were differentiated for tax purposes, the court decided a series of cases in which it held, "The decisive test of appropriation is whether the chattel under consideration in any case is devoted primarily to the business conducted on the premises, or whether it is devoted primarily to the use of the land upon which the business is conducted." *Zangerle v. Std. Oil Co. of Ohio* (1945), 144 Ohio St. 506, 30 O.O. 151, 60 N.E.2d 52, paragraph four of the syllabus. The court followed this analysis until 1949, when it dropped consideration of whether the land or the business was benefited by the item in question and instead considered only the wording of G.C. 5322, the precursor to R.C. 5701.02, which provided: "The terms 'real property' and 'land' as so used, include not only land itself * * * but also, unless otherwise specified, all buildings, structures, improvements, and fixtures of whatever kind thereon * * *." Am.S.B. No. 63, 115 Ohio Laws, Part II, 272. Current R.C. 5701.02 incorporates this definition.

{¶ 15} As a result of considering only the wording of G.C. 5322, the court declared, "Even if a structure or building located on land is personal property, such structure or building will, for purposes of taxation, be included within the definition of 'real property' as that term is defined in Section 5322 General Code, unless the General Assembly has otherwise specified." *Reed v. Fairfield Cty. Bd. of Revision* (1949), 152 Ohio St. 207, 40 O.O. 217, 88 N.E.2d 701, paragraph three of the syllabus. Following this reasoning, in analyzing more recent conflicts under R.C. 5701.02, the court merely had to determine whether an item was a building, structure, improvement, or fixture, and if it was any of those, it was classified as real property. Machinery and equipment were listed separately as personal property. As a result, photo kiosks in shopping-center parking lots and storage tanks were declared real property. During this time, the court determined that amusement-park rides similar to those in question were real property because they were structures and improvements on the land. See *Kings Entertainment Co. v. Limbach* (1992), 63 Ohio St.3d 369, 588 N.E.2d 777.

{¶ 16} By looking only at R.C. 5701.02 and a description of the item, the court abandoned any consideration of whether the item was being used to benefit the business on the land or the land itself. Confirmation of that conclusion is found in the court's statement in *Thomas Steel Strip Corp. v. Limbach* (1991), 61 Ohio St.3d 340, 341, 575 N.E.2d 114, concerning R.C. 5701.02: "We have recently and consistently interpreted this definition of real property and land to mean that any property attached to land is real property for tax purposes, unless otherwise specified. [Citation omitted.] We have drawn away from earlier rulings that asked whether the improvement primarily benefited the land or the business on the land."

{¶ 17} In 1992, the General Assembly passed Sub.S.B. No. 272, stating in the preamble that it was "[t]o amend sections 5701.02 and 5701.03 of the Revised Code to revise the definitions of real and personal property for taxation purposes." Sub.S.B. No. 272, 144 Ohio Laws, Part I, 1528.

{¶ 18} As amended by Sub.S.B.No. 272, R.C. 5701.02 continued to use the terms "[r]eal property" and "land" to include "all buildings, structures, improvements, and fixtures of whatever kind on the land." However, unlike the previous statute, in amended R.C. 5701.02 the General Assembly defined the terms "building," "structure," "improvement," and "fixture," thereby heeding the suggestion of this court in *Pittsburgh–Des Moines Steel Co. v. Lindley* (1982), 1 Ohio St.3d 15, 17, 1 OBR 39, 437 N.E.2d 302, fn. 3, wherein we declined to provide a definition for the term "structure," stating that the definition should emanate from the General Assembly.

{¶ 19} In addition, the General Assembly in Sub.S.B. No. 272 amended the definition of personal property in R.C. 5701.03 by adding a newly defined term: "business fixture."

{¶ 20} R.C. 5701.02, which is identical in all relevant respects to the version in effect during the audit period, provides:

{¶ 21} "(A) 'Real property,' 'realty,' and 'land' include land itself * * * with all things contained therein, and, *unless otherwise specified in this section or 5701.03 of the Revised Code*, all buildings, structures, improvements, and fixtures of whatever kind on the land * * *.

{¶ 22} "(B)(1) 'Building' means a permanent fabrication or construction, attached or affixed to land, consisting of foundations, walls, columns, girders, beams, floors, and a roof, or some combination of these elemental parts, that is intended as a habitation or shelter for people or animals or a shelter for tangible personal property, and that has structural integrity independent of the tangible personal property, if any, it is designed to shelter. * * *

{¶ 23} " * * *

{¶ 24} "(C) 'Fixture' means an item of tangible personal property that has become permanently attached or affixed to the land or to a building, structure, or improvement, and that primarily benefits the realty and not the business, if any, conducted by the occupant on the premises.

{¶ 25} "(D) 'Improvement' means, with respect to a building or structure, a permanent addition, enlargement, or alteration that, had it been constructed at the same time as the building or structure, would have been considered a part of the building or structure.

{¶ 26} "(E) 'Structure' means a permanent fabrication or construction, other than a building, that is attached or affixed to land, and that increases or enhances utilization or enjoyment of the land. 'Structure' includes, but is not limited to, bridges, trestles, dams, storage silos for agricultural products, fences, and walls." (Emphasis added.)

{¶ 27} R.C. 5701.03, identical in all relevant respects to the version in effect at the time of the audit, provides:

{¶ 28} "(A) 'Personal property' includes every tangible thing that is the subject of ownership, * * * including a business fixture, and that does not constitute real property as defined in section 5701.02 of the Revised Code. * * *

{¶ 29} "(B) 'Business fixture' means an item of tangible personal property that has become permanently attached or affixed to the land or to a building, structure, or improvement, and that primarily benefits the business conducted by the occupant on the premises and not the realty. 'Business fixture' includes, but is not limited to, machinery, equipment, signs, storage bins and tanks, whether above or below ground, and broadcasting, transportation, transmission, and distribution systems, whether above or below ground. 'Business fixture' also means those portions of buildings, structures, and improvements that are specially designed, constructed, and used for the business conducted in the building, structure, or improvement, including, but not limited to, foundations and supports for machinery and equipment. 'Business fixture' does not include fixtures that are common to buildings, including, but not limited to, heating, ventilation, and air conditioning systems primarily used to control the environment for people or animals, tanks, towers, and lines for potable water or water for fire control, electrical and communication lines, and other fixtures that primarily benefit the realty and not the business conducted by the occupant on the premises."

{¶ 30} One of the first questions we must address is how R.C. 5701.02 and 5701.03 should be applied. The version of R.C. 5701.02 in effect during the audit period provides that "unless otherwise specified in * * * section 5701.03 of the Revised Code, all buildings, structures, improvements, and fixtures of whatever kind on the land" are real property. Funtime contends that in applying R.C. 5701.02 and 5701.03, we first "see if property falls within the definition of real

property and if not, then * * * see if it is a business fixture and thus personal property." Funtime also contends that "[p]roperty is tested to see if it is a business fixture only after it has been determined that the property is **not** a structure, building, or improvement to a building." (Boldface sic.) Funtime further states that "only if property does not fall into one of the listed and defined categories of real property does the definition of a business fixture come into play."

{¶ 31} Under Funtime's interpretation, if an item meets the definition of "building" set forth in what is now R.C. 5701.02(B)(1), the analysis goes no further; the item would be classified as real property. As a result, the words "unless otherwise specified" in R.C. 5701.02 would be totally ignored if the property meets one of the definitions in R.C. 5701.02. The consequence of Funtime's interpretation would be to return to the analysis the General Assembly was apparently trying to change by enacting Sub.S.B. No. 272. Funtime's interpretation requires classifying an entity defined as real property under R.C. 5701.02 as real property even if it is "otherwise specified" as being personal property in R.C. 5701.03.

{¶ 32} In opposition to Funtime's interpretation, the Tax Commissioner contends that the "unless otherwise specified" language in R.C. 5701.02 requires a review of the definition in R.C. 5701.03 to determine whether the property at issue is covered by the definition of "business fixture." In other words, buildings, structures, improvements, and fixtures on land are not real property if such items are "otherwise specified" as personal property in R.C. 5701.03.

{¶ 33} Following Funtime's proposed procedure for applying R.C. 5701.02 and 5701.03 would not produce the result intended by the General Assembly when it amended R.C. 5701.02 and 5701.03. Reading the two statutes in pari materia and harmonizing them to give effect to the language of both statutes, we find that the correct order of application is as follows: first, determine whether the item meets the requirements of one of the definitions of real property set forth in R.C. 5701.02. If the item does not, then it is personal property. If the item fits a definition of real property in R.C. 5701.02, it is real property unless it is "otherwise specified" in R.C. 5701.03. If an item is "otherwise specified" under R.C. 5701.03, it is personal property.

{¶ 34} Funtime contends that Grizzly Run and Mind Eraser should be classified as real property because each is a "structure." The definition of "structure" set forth in R.C. 5701.02(E) requires (1) a permanent fabrication or construction other than a building that is attached or affixed to land and (2) increased utilization or enjoyment of the land as a result. The question in this case is whether Grizzly Run and Mind Eraser increase or enhance utilization or enjoyment of the land.

{¶ 35} Funtime contends that Grizzly Run and Mind Eraser enhance the utilization or enjoyment of the land because they attract patrons to the land. However, attracting more people to the land is not the criterion for classifying property.

{¶ 36} Although we previously abandoned any consideration of the appropriation-to-use test set forth in *Teaff,* 1 Ohio St. 511, 1853 WL 54, for classifying property, the General Assembly has reinstated that test for determining whether a structure is real or personal property. R.C. 5701.02(E) requires a decision as to whether the item "increases or enhances utilization or enjoyment of the land." Language similar to that now found in R.C. 5701.02(E) was used by this court in *Zangerle,* 144 Ohio St. at 515, 30 O.O. 151, 60 N.E.2d 52, wherein we stated:

{¶ 37} "The second requisite of the test of a fixture [real property] is that the annexed chattel must have such relationship to the land or improvements already constructed thereon as to be necessary or beneficial to its enjoyment, independent of the business presently carried on. To illustrate, a silo constructed on a farm is a fixture [citation omitted]; a heating furnace installed in a residence property is a fixture [citation omitted]; and motive-power equipment in a mill is likewise a fixture [citation omitted]. Those are fixtures because they would be beneficial, if not necessary, to the use of the land and the structures already placed thereon regardless of the nature of the business which might be located on such land."

{¶ 38} This concept was concisely set forth in paragraph four of the syllabus in *Zangerle:* "The decisive test of appropriation is whether the chattel under consideration in any case is devoted primarily to the business conducted on the premises, or whether it is devoted primarily to the use of the land upon which the business is conducted." *Zangerle,* 144 Ohio St. 506, 30 O.O. 151, 60 N.E.2d 52, paragraph four of the syllabus.

{¶ 39} The concepts regarding the appropriation-to-use test set forth in *Zangerle v. Std. Oil of Ohio* were reiterated by the court in *Zangerle v. Republic Steel Corp.* (1945), 144 Ohio St. 529, 30 O.O. 160, 60 N.E.2d 170, paragraph seven of the syllabus, in which the court held:

{¶ 40} "The general principle to be kept in view in determining whether what was once a chattel has become a fixture is the distinction between the business which is carried on in or upon the premises, and the premises. The former is personal in its nature, and articles that are merely accessory to the business, and have been put on the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the

benefit of a present business which may be of a temporary duration, become subservient to the realty and acquire and retain its legal character."

{¶ 41} The evidence presented to the BTA showed that the rides in question were installed to attract customers for the amusement-park business. The fact that the customers enjoy the rides has nothing to do with whether the rides benefit the land. There was no evidence that the rides would be of any benefit to a buyer of the land who engaged in a different business. Grizzly Run and Mind Eraser do not meet the definition of "structure" set forth in R.C. 5701.02(E) but do meet the definition of "business fixture" set forth in R.C. 5701.03(B) because they primarily benefit the business conducted by the occupant on the premises and not the realty.

{¶ 42} In its second proposition of law, Funtime contends that Skyscraper and the station houses located at Grizzly Run and Mind Eraser should be classified as buildings under the definition of "real property." Again, the Tax Commissioner contends that these properties are "business fixtures."

{¶ 43} Funtime contends that these properties should be classified as buildings because they have foundations, floors, roofs, and in some cases walls, columns, girders, and beams, and they are intended to shelter patrons.

{¶ 44} As regards the station house for Grizzly Run, Funtime's own witness stated that it was not at issue in this case. Therefore, we will not consider its status further.

{¶ 45} As regards Mind Eraser's station house, Funtime's witness could identify only $9,500 as being in dispute. The station house at Mind Eraser is a platform with a canvas cover over it, apparently to shade the patrons and possibly to provide some protection from rain. There are no sides to the structure. The station house is used to load and unload patrons onto and from Mind Eraser.

{¶ 46} Funtime contends that since the Mind Eraser station platform provides shelter, it is a building pursuant to R.C. 5701.02(B). Assuming for the purposes of discussion that the Mind Eraser station house can be considered separate from the ride itself and can be separately classified as a building, we must still consider whether it is "otherwise specified." The definition of "business fixture" in R.C. 5701.03(B) includes "an item of tangible personal property that has become permanently attached or affixed to the land * * * and that primarily benefits the business conducted by the occupant on the premises and not the realty." The primary use of the Mind Eraser station house is to provide a way for patrons to enter and exit Mind Eraser. No use independent of the amusement-park business was shown for the Mind Eraser station house. Therefore, even if we assume that the Mind Eraser station house is a building as defined in R.C. 5701.02(B), it is "otherwise specified" in R.C. 5701.03(B) and must be classified as a business fixture.

{¶ 47} Finally, we consider the Skyscraper ride. The ride consists of a doughnut-shaped glass enclosure that revolves around a tower to give the rider a view of the surrounding area. While Skyscraper may provide some shelter from the elements, shelter is not its primary purpose. Skyscraper's function is to provide rides to the patrons of the amusement park. For the reasons that Grizzly Run and Mind Eraser are business fixtures, Skyscraper is a business fixture.

{¶ 48} For all the foregoing reasons, we find the decision of the Board of Tax Appeals to be reasonable and lawful, and we affirm it.

Decision affirmed.

MOYER, C.J., RESNICK and O'CONNOR, JJ., concur.

PFEIFER, J., dissents.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 49} Funtime's rides constitute structures as set forth in R.C. 5701.02(E). To constitute a structure under the statute, the property must (1) be a "permanent fabrication or construction, other than a building, that is attached or affixed to land" and (2) increase "the utilization or enjoyment of the land." The first element is undisputed, and I would hold that Funtime's rides do increase the utilization or enjoyment of the land.

{¶ 50} Parks like Geauga Lake and Cedar Point have geographical features that first attracted people. In the 1800s, the area on the northeast side of Geauga Lake was referred to as "Picnic Lake" or "Giles Pond." Early visitors frequented the area for camping, fishing, and picnicking. Geauga Lake was a popular resort in the 1880s and 90s. The area around the pond was an all-day picnic ground. The old Cleveland Nationals played baseball on Sundays when Cleveland's blue laws prevented holding city games. The land and the location were the attraction. Over time, however, other attractions were added to enhance the appeal of the land.

{¶ 51} In 1889, the first ride, a steam carousel, opened at the park. In 1925, Geauga Lake built its first roller coaster, the Big Dipper. It was the largest wooden coaster of its time. In 1927, Geauga Lake built the Olympic-size swimming pool in which Johnny Weissmuller broke the world 220–yard free-style swimming record. All manner of attractions were added through the years, from a dance hall to a water park, all intended to make the park more attractive to visitors.

{¶ 52} The amusement business is about drawing people to the land. Typically, an amusement park charges an entry fee to enter its grounds. Most parks do not charge on a per-ride basis, and it is not alleged that Funtime did so here. Business is created with an increase in the utilization or enjoyment of the land.

{¶ 53} Appellee points out that size does not matter to the Tax Commissioner and gives examples of massive objects that are not considered fixtures. Tanks and broadcast towers are mentioned in R.C. 5701.03. Cited cases by appellee addressed oil-refinery property, stone piers to support railroad bridges, an in-plant rail network, and 340–foot–long tunnel kilns. However, none of those examples are designed to draw people to a particular place. Most simply aid a business in manufacturing its product or help a business transport its wares to people in other places. It is not the size of Funtime's rides that makes them structures, but their purpose.

{¶ 54} An amusement-park company is not a manufacturer. It does not manufacture fun. It does everything it can to make a piece of real property as attractive as it can be. Rides are a part of that effort and should be considered structures under R.C. 5701.02(E).

{¶ 55} Geauga Lake has been a recreational area for well over 100 years. Recreational use has been historically demonstrated to be its purpose. Anything that improves the recreational use of the property aids what has become that property's essential purpose.

---

**O'DONNELL, J., dissenting.**

{¶ 56} I respectfully dissent. In my view, the Geauga Lake attractions known as Grizzly Run, Mind Eraser, and Skyscraper are not items of personal property; rather, each is a structure and therefore falls within the definition of real property as specified by R.C. 5701.02. As provided in R.C. 5701.02(E), a structure consists of "a permanent fabrication or construction, other than a building, that is attached or affixed to land, and that increases or enhances utilization or enjoyment of the land." This is, in my view, an accurate description of these three amusements.

{¶ 57} It is of no consequence that any of them would have no value if a person subsequently purchased the property for a different purpose because that is not the test provided by the General Assembly for determining whether property is to be classified as personalty or realty.

{¶ 58} As defined in R.C. 5701.03(B), a business fixture is "an item of tangible personal property that has become permanently attached or affixed to the land or

to a building [or] structure* * * that primarily benefits the business conducted by the occupant on the premises and not the realty. 'Business fixture' includes, but is not limited to, machinery, equipment, signs, storage bins and tanks, * * * and broadcasting, transportation, transmission, and distribution systems * * *." A business fixture also means "those portions of buildings, structures, and improvements that are specially designed, constructed, and used for the business conducted in the building, structure, or improvement, including, but not limited to, foundations and supports for machinery and equipment." Id.

{¶ 59} Literal application of this three-part definition of a business fixture to the three amusement attractions involved in this appeal reveals that they are not tangible personal property that have been attached to real estate, nor are they akin to machinery, equipment, or signs, etc., nor are they structures specially designed, constructed, and used for business conducted in a structure, such as a foundation or a machinery support, because the amusement attractions are themselves structures as defined in R.C. 5701.02(E).

{¶ 60} For the foregoing reasons, I dissent from the majority's opinion and would hold that Funtime's amusement rides constitute structures included in the definition of real property.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____

Buckingham, Doolittle & Burroughs, L.L.P., Steven A. Dimengo, and David W. Hilkert, for appellant.

Jim Petro, Attorney General of Ohio, and Richard C. Farrin, Assistant Attorney General, for appellee.