SCHNEIDER, Appellant,

v.

SCHNEIDER et al., Appellees.

[Cite as *Schneider v. Schneider,* 178 Ohio App.3d 264, 2008-Ohio-4495.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 07CA009219.

Decided Sept. 8, 2008.

James S. Gemelas, for appellant.

W.E. Gerstenslager, for appellees.

DICKINSON, Judge.

## INTRODUCTION

{¶ 1} Lula Schneider filed this replevin action to recover two dogs from her parents-in-law, Robert and Linda Schneider. Robert and Linda claim that their son, Gary, Lula's former husband, gave them the dogs before he died. Lula claims that the trial court incorrectly decided that Gary had given the dogs away, because the evidence did not support that decision and the decision was based on inadmissible hearsay testimony regarding statements allegedly made by Gary. This court reverses the decision of the trial court because it is against the manifest weight of the evidence.

## FACTS

{¶ 2} Lula is suing to recover a golden retriever and a border collie that she and her husband, Gary, bought in 2000. Until 2004, the dogs lived with them, their son, and Lula's older children in a house owned by Gary's parents, Robert and Linda. The house was located near Robert and Linda's home.

{¶ 3} During the summer of 2004, Lula and Gary began having serious marital problems. In early July, Lula filed a domestic-violence charge against Gary, and the court issued a temporary protective order. Shortly thereafter, the couple reconciled, the order was lifted, and Gary returned to the marital home. On July 12, 2004, however, Lula and the children moved out of the house. Lula testified that they moved to an apartment that did not allow pets, and she left the dogs with Gary. Three months later, on October 9, 2004, Gary died of a drug overdose.

{¶ 4} Lula testified that shortly after Gary's funeral, she attempted to gain access to the marital home and found that the locks had been changed. She also

testified that Robert and Linda had taken the dogs to their house and would not return them to her. Lula first filed suit in probate court to recover the dogs and various other items from the home. She later dropped her request for the dogs from that lawsuit and pursued it in this replevin action in municipal court.

{¶ 5} At trial, Robert testified that his son asked him to take care of the dogs during the summer of 2004. Robert testified that after Lula left, Gary would leave the dogs outside all day. Because one electric fence surrounded the entire property, including both houses, the dogs were free to roam around Robert and Linda's home. The evidence indicated that Gary left for work at 5:30 a.m. and habitually returned home very late at night. Both dogs spent all day at Robert's house with Linda. Beginning in July, the golden retriever started spending nights at Robert and Linda's house as well.

{¶ 6} Robert testified that he, Linda, and Gary had many conversations that summer about the future care of the dogs. According to Robert, Gary asked them for help with the dogs in July because of his work schedule and activities in the evenings. Robert testified that Gary told him, "I cannot work and do what I'm doing and care for these dogs." So, Gary asked his parents to "help [him] out here and take care of the dogs." According to Robert, Gary told his parents that he "[didn't] know what's going to happen, but it's apparent that the dogs prefer to be [at your house], and you can take care of them." Robert testified that he and Linda have had possession of the dogs since July 2004.

{¶ 7} Lula disputed Robert and Linda's claim that they had possession of the dogs since July. According to Lula, she continued to help care for the dogs after she moved out. She testified that she and Gary had some contact beginning about a week after she left. She said that two or three times each week, she would stop by the house to pick up something she had failed to pack. She also testified that she and Gary were working toward reconciliation and that she had hoped to move back in by Christmas. She even spent a few nights in the home with Gary while she maintained the apartment. She testified that on each of these occasions, the dogs were in the home. There was also evidence, however, that as time went on, Gary was not taking good care of the dogs. Lula testified that she had to fill the food and water bowls and sometimes saw evidence of feces on the upstairs carpet.

{¶ 8} Lula's daughter, Penny Opdyke, testified in support of her mother. Penny said that after Lula moved, she frequently stopped by the house at her mother's request to retrieve things. Penny testified that she went to the house 30 to 40 times between July and October. According to her, the dogs were always there, and their food bowls and toys were still there as well.

{¶ 9} In September, things took a turn for the worse, and both Gary and Lula filed for divorce. On September 13, 2004, a domestic-relations court ordered

Gary not to remove or dispose of any property or household pets. According to Lula, the dogs were still in Gary's possession at that time.

{¶ 10} Robert testified that by late summer, both of the dogs were living at his house. He and Linda were feeding them, watering them, and taking them to the veterinarian. Robert testified that Gary approached his parents again in late September, shortly before he died, and told them that he could not care for the house or the dogs anymore. According to Robert, Gary "begged" his parents to take the dogs because he was not able to care for them. "[His] life [was] turning into shambles * * * he was drinking more [and] he started using drugs." He told them that in order to "simplify [his] life," he intended to look for a smaller residence and "he[ ] [would] not * * * be able to keep the dogs." His parents agreed to take them.

{¶ 11} After a bench trial, the court awarded permanent possession of the dogs to Robert and Linda because "the dogs were gifted by Gary Schneider to [his parents] in July 2004 during a time when there were no court orders in effect restricting his right to dispose of family pets." Lula has appealed that decision, arguing that it was not supported by the evidence and was based on hearsay statements allegedly made by her deceased husband. This court reverses the decision of the trial court because it was against the manifest weight of the evidence.

## REPLEVIN

{¶ 12} Lula's first assignment of error is that the trial court incorrectly decided that her late husband had given a valid inter vivos gift of the dogs to his parents "in July 2004 during a time when there were no court orders in effect restricting his right to dispose of family pets." Lula has argued that the evidence did not support the court's decision.

{¶ 13} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 26, the Ohio Supreme Court held that the test for whether a judgment is against the weight of the evidence in civil cases is different from the test applicable in criminal cases. According to the Supreme Court in Wilson, the standard applicable in civil cases "was explained in *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578." Id. The explanation in *C.E. Morris* was that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co.*, 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus; but see *Huntington Natl. Bank v. Chappell*, 9th Dist. No. 06CA008979, 2007-Ohio-4344, 2007 WL 2409795, at ¶ 17–75 (Dickinson, J., concurring).

{¶ 14} Replevin is "[a]n action whereby the owner or person entitled to repossession of goods or chattels may recover those goods or chattels from one who * * * wrongfully detains [them]." *Davis v. Springfield Police Dept.*, 2d Dist. No. 2003–CA–44, 2004-Ohio-1164, 2004 WL 473810, at ¶ 11, quoting Black's Law Dictionary (6th Ed.1990) 1299. Replevin is a claim for wrongful detention of goods, but it does not require an unlawful taking. *Tewarson v. Simon* (2001), 141 Ohio App.3d 103, 117, 750 N.E.2d 176. "The action 'is strictly a possessory action, and it lies only in behalf of one entitled to possession against one having, at the time the suit is begun, actual or constructive possession and control of the property.'" Id., quoting *Black v. Cleveland* (1978), 58 Ohio App.2d 29, 32, 12 O.O.3d 36, 387 N.E.2d 1388, quoting Cobbey, Replevin (2d Ed.1990), Section 64. The plaintiff in a replevin action is required to "prove that he is entitled to possession of the property and that, at the time the [suit] was filed, the defendant had actual or constructive possession and control of [it]." *Mulhollen v. Angel,* 10th Dist. No. 03AP–1218, 2005-Ohio-578, 2005 WL 351761, at ¶ 23, citing *Tewarson,* 141 Ohio App.3d at 117, 750 N.E.2d 176.

## INTER VIVOS GIFT

{¶ 15} In defense of this replevin action, Robert and Linda have asserted that Gary gave them the dogs before he died. An inter vivos gift is characterized by "an immediate, voluntary, and gratuitous transfer of * * * personal property * * * " *Bolles v. Toledo Trust Co.* (1936), 132 Ohio St. 21, 26–27, 7 O.O. 60, 4 N.E.2d 917, quoting *Flanders v. Blandy* (1887), 45 Ohio St. 108, 113, 12 N.E. 321. The essential elements of a valid inter vivos gift are "[the donor's] intention * * * to transfer the title and right of possession * * * to the donee then and there, and * * * a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable * * * with relinquishment of ownership, dominion, and control over it." Id. at paragraph one of the syllabus.

{¶ 16} Lula had the burden to persuade the trier of fact that she was entitled to possession of the dogs. See *Mulhollen,* 2005-Ohio-578, 2005 WL 351761, at ¶ 23. Robert and Linda had no burden of proof in this matter. The gift defense was not an affirmative defense that would have shifted the burden to them because it is neither listed in Rule 8(C) of the Ohio Rules of Civil Procedure, nor encompassed within the catchall provision for "any other matter constituting an avoidance or affirmative defense." Robert and Linda were not seeking affirmative relief and did not introduce a new issue into the case. They "simply testified to that which disproved plaintiff's claim." *Grable v. Henderson* (1934), 49 Ohio App. 145, 148, 195 N.E. 485. Under Wilson, however, for the judgment in favor of Robert and Linda to not be against the manifest weight of the evidence, there must be competent, credible evidence in the record rebutting Lula's evidence that

she was entitled to possession of the dogs. See *Chappell*, 2007-Ohio-4344, 2007 WL 2409795, at ¶ 53–54 (Dickinson, J., concurring).

{¶ 17} The parties agree that Gary and Lula acquired the dogs during their marriage and jointly owned them at least until Lula moved out of the marital home in July 2004. Robert and Linda have argued that their son gave them the dogs shortly thereafter. Lula has argued that she has the only right of possession in the dogs because, if Gary gave the dogs to his parents, he did not do so until after September 13, 2004, when the domestic-relations court issued an order restricting Gary's right to dispose of marital property. Robert and Linda have questioned whether that order would have affected Gary's right to dispose of the dogs. The parties have not argued, however, and the trial court did not hold, that Gary made the gift in September. Therefore, this court expresses no opinion regarding what effect the September 13, 2004 domestic-relations order might have if the trial court had determined that Gary made a gift in September.

{¶ 18} The trial court determined that Lula's claim must fail because Gary gave the dogs to his parents as a gift "in July 2004 during a time when there were no court orders in effect restricting his right to dispose of family pets." There was evidence that in July, Gary spoke to his parents about taking care of the dogs. The evidence indicated that the dogs were spending their days at Robert and Linda's house and that one of the dogs was sleeping there as well. Robert and Linda were caring for the dogs daily and taking them to the vet as needed. If Gary had died without any further comment on the matter, the trial court's decision may have been supported by competent, credible evidence. It may have been possible to conclude that Gary, in July, intended to permanently give the dogs to his parents.

{¶ 19} The question of whether Gary intended to permanently relinquish possession of the dogs in July, however, was answered by Gary in "late September, in that time frame, shortly before [he] died." At that time, according to his father, Gary approached his parents again, this time specifying that he wanted his parents to take the dogs from him so that he could move to a smaller home without the animals. This evidence indicates that Gary had not intended to give ownership of the dogs to his parents in July.

{¶ 20} Inasmuch as an inter vivos gift is not valid without the donor's intent to permanently relinquish ownership and control, the trial court's decision that Gary gave the dogs to his parents in July was not supported by competent, credible evidence. See *Bolles v. Toledo Trust Co.* (1936), 132 Ohio St. 21, 4 N.E.2d 917, at paragraph one of the syllabus. Robert and Linda may have had possession of the dogs beginning in July, but Gary did not attempt to relinquish permanent ownership and control until late September, just before he died. Therefore, there was no gift in July, and the trial court's decision that there was is against

the manifest weight of the evidence. Lula's first assignment of error is sustained.

## HEARSAY

{¶ 21} Lula's second assignment of error is that the trial court incorrectly allowed Robert to testify about what his son said about the dogs, in contravention of Rule 804(B)(5) of the Ohio Rules of Evidence. Lula, however, failed to object to that testimony during the trial.

{¶ 22} An appellate court need not consider an error that a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus. See also *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 322 N.E.2d 629; *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 436, 659 N.E.2d 1232. As this argument was not properly preserved for appeal, this assignment of error is overruled.

## CONCLUSION

{¶ 23} The trial court's decision is against the manifest weight of the evidence because there was no competent, credible evidence that Gary intended, as of July 2004, to permanently relinquish ownership and control of the dogs. The judgment of the Avon Lake Municipal Court is reversed, and the cause is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

MOORE, P.J., concurs.

WHITMORE, J., concurs in judgment only.