[Cite as *Berry's Restaurant, Inc. v. Aisling, L.L.C.*, 2022-Ohio-1971.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

Berry's Restaurant, Inc.

    Appellant/Cross-appellee

v.

Aisling, LLC

    Appellee/Cross-appellant

Court of Appeals No.  H-21-003

Trial Court No.  CVH 2020 0494

**DECISION AND JUDGMENT**

Decided:  June 10, 2022

* * * * *

Kenneth R. Bailey, Jessica D. Compton, and Danielle Kulik, for
appellant/cross-appellee.

James W. Hart, and John M. Felter, for appellee/cross-appellant.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an appeal from judgments of the Huron County Court of Common

Pleas, which granted, in part, the complaint in replevin by plaintiff-appellant/cross-

appellee, Berry's Restaurant, Inc. (hereafter "Berry"), denied the counterclaim for unjust

enrichment by defendant-appellee/cross-appellant, Aisling, LLC (hereafter "Aisling"), and denied Berry's motion to stay the execution of the judgment. For the reasons set forth below, this court affirms the judgments of the trial court.

## I. Background

{¶ 2} On June 23, 2020, Berry filed a complaint in replevin against Aisling. Berry alleged that it leased premises to operate a restaurant at 15 West Main Street, Norwalk, Huron County, Ohio, from a landlord, and the tenancy terminated due to a bank foreclosure. Aisling purchased the premises at the sheriff sale and took possession of the premises on February 12, 2020. Berry alleged that since then its personal property and chattel for operating a restaurant is in Aisling's possession and that Aisling is wrongfully detaining the same.

{¶ 3} The record shows that both Berry and Aisling are controlled by members of the same family, and Berry and the former landlord are controlled by the same person.

{¶ 4} Aisling answered, as amended, generally denying the allegations, and counterclaimed for unjust enrichment for the costs of utilities and repairs to equipment that stored and preserved Berry's perishable food. Berry answered appellee's counterclaim by generally denying all allegations.

{¶ 5} After court-ordered mediation resulted in an impasse, the two-day replevin and counterclaim bench trial occurred on December 18, 2020, and on January 6, 2021. During the bench trial the trial court judge conducted an on-site viewing of the disputed

2.

items at the premises with the parties present, heard testimony from two witnesses and admitted six exhibits into evidence. On the record, the trial court described the purpose of the on-site viewing: "we would go through each of the rooms in the restaurant, and * * * individually list what we consider to be a fixture * * *. Anything that's not on the list would essentially be considered [as] * * * chattel, and not part of the real estate transaction." Under the direction of the trial court judge, the court reporter took 153 photos during the on-site viewing of the building's contents, and those photos were admitted into evidence without objection.

{¶ 6} The trial court's January 25, 2021 judgment entry detailed its determinations of the replevin and unjust enrichment claims. First, the trial court determined that "any personal property not affixed to the building in any manner are subject to replevin and [Berry] is entitled to remove such property." Second, the trial court found that the parties "had resolved among themselves the disposal of all food items that remained at the time of [the sheriff] sale." Third, the trial court, using the 153 photos taken by the court reporter, determined the status of dozens of items in accordance with the following seven considerations: (1) "the extent to which any such item is attached or annexed to the property"; (2) "the appropriation to the use or purpose of that part of the realty with which it is connected"; (3) "the intention of the party making the annexation to make a permanent accession to the realty"; (4) "the nature of the property"; (5) "the degree of difficulty in removing such property"; (6) "the damage that would result from removal of

3.

the property"; and (7) "the doctrine of constructive annexation where some items are integral to items that are attached to the realty." Fourth, the trial court determined there was "insufficient evidence to order reimbursement to [Berry]" for items thrown out by Aisling after taking possession. Fifth, the trial court denied Aisling's counterclaim for freezer repair and maintenance costs "since the Court finds the freezer to be a fixture" and Aisling's evidence was "for the entirety of the electricity of the property not just the freezers." Finally, the trial court granted Berry until March 2, 2021, to remove the personal property detailed in the order.

{¶ 7} On February 10, 2021, Berry filed a motion to stay the trial court's January 25 order or, alternatively, to hold either an evidentiary hearing for a more specific access order or to extend Berry's access to the premises for 14 days. Berry argued that Aisling was unreasonably obstructing Berry's access to the premises to remove its 70-years' worth of personal property. Aisling denied obstructing Berry and opposed any time extension, but consented to the trial court ordering an evidentiary hearing to establish detailed rules for Berry's access until the original March 2 deadline.

{¶ 8} One source of dispute in this appeal is the sequence of events on February 24. Thirty minutes prior to the trial court's scheduled telephone conference with the parties to mediate the Berry's access to the premises, Berry filed a notice of appeal and did not raise that fact during the negotiations. Without knowledge of Berry's appeal, the trial court granted Berry's motion, in part, with time until March 8 to remove its property

4.

from the premises. Upon learning of Berry's appeal, the trial court vacated its post-appeal judgment.

{¶ 9} Berry filed its appellate brief setting forth four assignments of error:

1. The trial court erred in failing to consider whether the property subject to the replevin action was a "fixture" or a "business fixture."

2. The trial court erred in determining that certain property subject to the replevin action was a "fixture" when it was a "business fixture."

3. The trial court erred in failing to consider Appellant's motion to stay execution of judgment after the notice of appeal was filed.

4. The trial court erred in vacating the judgment entry dated February 25, 2021 granting appellant additional time to retrieve its property.

{¶ 10} Thereafter, Aisling filed its cross-appeal setting forth one assignment of error: "The Trial Court erred by finding that Appellee/Cross-Appellant was not entitled to damages as alleged in its counterclaim."

## II. Replevin

{¶ 11} "'Replevin is a claim for wrongful detention of goods, but it does not require an unlawful taking. The action is strictly a possessory action, and it lies only in behalf of one entitled to possession against one having, at the time the suit is begun, actual or constructive possession and control of the property.'" *Eltibi v. Kocsis*, 9th Dist.

Summit No. 29885, 2021-Ohio-2911, ¶ 13, quoting *Schneider v. Schneider*, 178 Ohio App.3d 264, 2008-Ohio-4495, 897 N.E.2d 706, ¶ 14 (9th Dist.).  Berry's burden in the replevin action is by the preponderance of evidence.  *Id.* at ¶ 14, citing *Schneider* at ¶ 16; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19.

### A. Standard of Review

{¶ 12} Berry argues the appropriate standard of review for a replevin action is de novo because, as a matter of law, the trial court failed to use the "proper analysis" pursuant to R.C. 5701.02 and 5701.03, and failed to delineate which items are "fixtures" versus "business fixtures."

{¶ 13} Appellate review of a trial court's judgment in a civil replevin action is for the manifest weight of the evidence.[1] *Lewis v. Coup*, 6th Dist. Sandusky No. S-10-0006, 2010-Ohio-4386, ¶ 28.  "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'"  *Id.*, quoting *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.  We give the trier of fact's determinations of fact great deference.  *Id.*, citing *Seasons Coal Co. v. City of*

---

[1] Aisling argues the standard of review is "clearly erroneous" because the determination of whether an item is personal property or a "fixture" is a mixed question of law and fact under *Dee Cee Assoc. v. Norfolk & W. Ry. Co.*, 6th Dist. Huron No. H-90-16, 1991 WL 156538, *2 (Aug. 16, 1991).  That case involved injunctive relief sought by a landowner to stop the railroad from removing a bridge and does not articulate Aisling's proposed standard of review.

6.

*Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *Eastley* at ¶ 21 ("In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact.").

## B. Goods or Chattel Subject to Replevin

{¶ 14} The owner of Berry testified at the bench trial that the replevin action is for all items not attached to the premises and where he did not intend the item to remain in the building forever. Berry concedes the trial court's January 25 order granted that request: "[A]ny property not affixed to the building in any manner are subject to replevin and the Plaintiff is entitled to remove such property." However, Berry believes the trial court should have done more than just focus on how an item is affixed to the building.

{¶ 15} In support of its first and second assignments of error, Berry collectively argues that as a result of the trial court's failure to follow R.C. 5701.02 and 5701.03, "the sinks, dishwasher, table, shelving, walk-in cooler, bar, condenser, and ice-cream unit are business fixtures and not fixtures" owned by Berry and removable from the premises. Berry further argues "other kitchen items * * * may be business fixtures had [the trial court] used the proper analysis." Although Berry concedes this matter is not a "tax case," it argues the "fixtures" and "business fixtures" definitions under those statutes prevail and are subject to de novo review because "the foundational law upon the classification [of a fixture] arose from a non-tax case," citing *Teaff v. Hewitt,* 1 Ohio St. 511 (1853).

7.

### 1. Non-Tax Case

{¶ 16} It is undisputed the underlying replevin action is not a tax case. Despite Berry's urgings to the contrary, the Ohio Supreme Court determined that the definitions found in R.C. 5701.02 and 5701.03, are limited "for taxation purposes," as stated in the legislation's preamble. *Funtime, Inc. v. Wilkins*, 105 Ohio St.3d 74, 2004-Ohio-6890, 822 N.E.2d 781, ¶ 17. We also agree with the Second Distract Court of Appeals when it explained,

> based on the court's comments in *Funtime*, it is clear that the common law test for fixtures established in *Teaff* and its progeny was altered only because of specific statutory provisions relating to taxation. It was not altered for other types of cases. Consistent with this conclusion, before and after the 1992 amendments to the taxation statutes, courts have applied *Teaff* and its progeny to cases that do not involve taxation.

*BND Rentals, Inc. v. Dayton Power & Light Co.*, 2020-Ohio-4484, 158 N.E.3d 993, ¶ 35 (2d Dist.). Based on the foregoing, we find no trial court error in a non-tax case for failing to analyze whether the disputed items were "fixtures" or "business fixtures" pursuant to R.C. 5701.02 and 5701.03.

### 2. "Fixture" or "Not a Fixture"

8.

**{¶ 17}** The trial court analyzed each disputed item in this replevin action as either a "fixture" or "not a fixture." The Ohio Supreme Court defines a "fixture" in non-tax cases as, "an article which was a chattel, but which by being physically annexed or affixed to the realty, became accessory to it and part and parcel of it." *Teaff* at 527.[2] The enduring test to determine whether a specific article is a "fixture" is from the "united application of the following requisites":

> 1st. Actual annexation to the realty, or something appurtenant thereto.

> 2d. Appropriation to the use or purpose of that part of the realty with which it is connected.

> 3d. The intention of the party making the annexation, to make the article a permanent accession to the freehold -- this intention being inferred from the *nature* of the article affixed, the *relation* and *situation* of *the party* making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made. (Emphasis sic.)

*Id.* at 529-530.

---

[2] Berry argues the analysis by the Ninth District Court of Appeals is very similar to this case and that this court should adopt the same factual findings as that court. However, we find that court applied the distinguishable facts from that case to the law developed in that District when it reached its conclusions for "fixtures." *Perez Bar & Grill v. Schneider*, 9th Dist. Lorain No. 11CA010076, 2012-Ohio-5820, ¶ 16-21.

9.

{¶ 18} In light of the trial court's seven considerations, Berry is mistaken the sole criterion used was "if it was attached * * * notwithstanding its intended use and whether it would benefit the business." We recognize the trial court's considerations in the January 25 order. *Harbor Island Ass'n, Inc. v. Kaiser*, 6th Dist. Ottawa No. 93OT022, 1994 WL 240289, *5 (June 3, 1994), citing *Masheter v. Boehm*, 37 Ohio St.2d 68, 307 N.E.2d 533 (1974), paragraph two of the syllabus. We also recognize the doctrine of constructive annexation. "[E]ven slight attachment or constructive attachment may be sufficient if the other prerequisites are met." *Id.*; *Masheter* at 73. The doctrine of constructive attachment refers to items which belong to the realty "not upon the principle of fixtures, but upon the principle of being necessary and essential incidents to it, and of no value abstracted from it." *Teaff,* 1 Ohio St. at 527.

{¶ 19} In addition, Berry does not point to anything in the record that the trial court presumed Aisling owned all disputed items or considered Berry had abandoned them. The trial court's January 25 order merely stated, "Any personal property remaining at the conclusion of the thirty (30) day period shall be deemed abandoned and may be appropriated by Defendant or disposed of by Defendant as they so choose."

### 3. Owner's Intent

{¶ 20} Berry's replevin action arguments pivot on its owner's testimony at the bench trial and in an affidavit in the record that he never intended any "business fixtures" to remain with the building after the foreclosure because, although used by the restaurant

10.

for as long as 75 continuous years, they could be used at a new restaurant he might open elsewhere someday.

{¶ 21} The owner of Aisling testified that for very similar reasons, the disputed items continuously used at the premises for restaurant purposes were "fixtures" because they would continue to support a restaurant at the premises, which Aisling intended to open. Aisling's owner further testified that because the bank foreclosure listed Berry as a separate defendant from the owner, Aisling believed the sheriff sale, which is based on the mortgage foreclosed upon, included "everything [left behind] that the building was appropriate for, which it was a restaurant.

{¶ 22} The "real intention" of the owner of the chattel does not necessarily govern to prohibit the creation of a "fixture." *See Holland Furnace Co. v. Trumbull Sav. & Loan Co.*, 135 Ohio St. 48, 53, 19 N.E.2d 273 (1939). The apparent or legal intention to make it a "fixture" is sufficient. *Id.* at 53-54. As the Ohio Supreme Court explained:

> His intention not to make it a part of the realty must not be secret, but may be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, the purpose and use for which the annexation is made, the utility in use or the indispensability of the combination when the chattel is once attached to the realty in the use of the whole, and the relationship of the owner of the chattel to the owner of the realty and to others who may

11.

become interested in or owners of the property. The fact that a chattel attached to realty is or is not a fixture must appear from an inspection of the property itself, in the absence of actual notice to the contrary, or of such circumstances as would put a prudent person upon inquiry to ascertain the fact.

*Id.* at 54.

{¶ 23} It is undisputed the trial court judge personally conducted an inspection of the premises on December 18, 2020, and the parties' intentions for the disputed items were presented to the trial court. We give great deference to the judge's evaluation of every item shown in the 153 photos.

{¶ 24} We reviewed the entire record and applicable law and find there is some competent, credible evidence going to all the essential elements of the replevin action, and the trial court's decision is not against the manifest weight of the evidence.

{¶ 25} Berry's first and second assignments of error are not well-taken.

### C. Stay of Judgment Execution

{¶ 26} In support of its third assignment of error, Berry argues "there is clear error" when the trial court "denied ever having [received] a motion to stay although such motion was filed on February 10, 2021." Berry further argued in the record that it had no duty to inform the trial court that it had filed a notice of appeal other than to file the documents in accordance with the Appellate Rules.

12.

**{¶ 27}** The record shows that after conducting a telephone conference with the parties on February 24, the next day the trial court granted Berry's motion, in part, by modifying its January 25 order to extend access to the premises until March 8. As conceded by Berry and revealed in the trial court's March 2 sua sponte judgment entry, "Unbeknownst to the Judge, Plaintiff's counsel filed a Notice of Appeal from the Court's January 25, 2021 ruling approximately one-half hour prior to the phone conference on February 24, 2021. For whatever reason, the Court was not provided the courtesy of being informed by Plaintiff's counsel that the appeal had been filed or even that an appeal was being contemplated." The trial court concluded with, "The Court has not received any request for a stay of the Court's order." The trial court then vacated its February 25 order, which restored the original January 25 order.

**{¶ 28}** Civ.R. 62(A) states that the trial court, upon receipt of a motion "[i]n its discretion and on such conditions for the security of the adverse part as are proper * * * may * * * stay the execution of the judgment or stay any proceedings to enforce the judgment until * * * filing a notice of appeal." Review of a trial court's determination of a motion for stay of execution under Civ.R. 62 is for an abuse of discretion. *See State ex rel. R.W. Sidley, Inc. v. Crawford*, 100 Ohio St.3d 113, 2003-Ohio-5101, 796 N.E.2d 929, ¶ 26. Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v.*

13.

*Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 29} Pursuant to Civ.R. 62(A), Berry's February 10 motion for stay expired upon filing its February 24 notice of appeal. Thereafter, at the time of the trial court's March 2 judgment entry, the record shows Berry did not seek a stay pursuant to Civ.R. 62(B) or App.R. 7, which govern the procedure for obtaining a stay of a judgment pending appeal. *Tillimon v. Bailey*, 6th Dist. Lucas No. L-19-1072, 2020-Ohio-1243, ¶ 18. As a result of Berry's failure to seek a stay pursuant to Civ.R. 62(B) or App.R. 7,[3] Berry waived any trial court error for failing to grant a stay request. *Id.*

{¶ 30} We reviewed the entire record and applicable law and do not find the trial court abused its discretion when its March 2 order stated that Berry had not filed a post-appeal motion for stay under Civ.R. 62(B) or App.R. 7. We do not find the court's attitude was unreasonable, arbitrary or unconscionable.

{¶ 31} Berry's third assignment of error is not well-taken.

### D. Time Extension

{¶ 32} In support of its fourth assignment of error, Berry argues the trial court erred by vacating its February 25 order granting Berry a negotiated six-day extension for

---

[3] We recognize that on May 14, 2021, Berry filed with this court a motion for stay pending appeal pursuant to App.R. 7(A). Over Aisling's objections, we granted Berry's motion on July 6, and conditioned the stay on Berry posting with the clerk of court a supersedeas bond in the amount of $50,000. In the absence of any evidence in the record that Berry posted the required supersedeas bond, our grant of stay is not yet effective.

14.

access to the premises. Berry points out the trial court's March 2 order implied the reason for vacating the February 25 order was because it lacked jurisdiction. Berry further argues the February 25 order "would only aid in executing the judgment and is in no way contrary to the jurisdiction of the Appellate Court" upon the filing of the notice of appeal on February 24.

{¶ 33} "'Jurisdiction' means 'the courts' statutory or constitutional power to adjudicate the case.' * * * 'If a court acts without jurisdiction, then any proclamation by that court is void.'" (Citations omitted.) *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11; *McAuley v. Smith*, 82 Ohio St.3d 393, 395, 696 N.E.2d 572 (1998) (when a trial court acts post-appeal without jurisdiction, that action is a legal nullity). "The authority to vacate a void judgment * * * constitutes an inherent power possessed by Ohio courts." *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph four of the syllabus.

{¶ 34} The Ohio Supreme Court guides us that "the determination as to the appropriateness of an appeal lies solely with the appellate court." *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 10. An appeal is perfected upon the filing of a notice of appeal, at which point "the trial court loses jurisdiction except to take action in aid of the appeal"[4] but "retains jurisdiction over issues not inconsistent with the

---

[4] This case is factually distinguishable from *Powell v. Turner*, 16 Ohio App.3d 404, 476 N.E.2d 368, 369 (11th Dist.1984), paragraph one of the syllabus, which states, "a trial court does have jurisdiction to rule on a motion for a stay of execution since it is

15.

appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from." *Id.* at ¶ 9.

{¶ 35} Berry argues that despite filing a notice of appeal seeking reversal of the trial court's January 25 order due to "improper" analysis, the trial court's post-appeal modification of that order with a time extension to remove items that benefitted from that "improper" analysis merely aids in executing the January 25 order. We disagree. Berry's faulty logic highlights the inconsistency between the outcome it seeks from the trial court and the outcome it seeks from this court on appeal. Berry is not seeking the trial court to issue a ruling in aid of the appeal; rather, Berry is seeking a trial court ruling notwithstanding the appeal it initiated. A trial court lacks jurisdiction to further adjudicate after a party files a notice of appeal where the underlying issues to be adjudicated are now with the court of appeals and are affected by the appeal. *State ex rel. Bohlen v. Halliday*, 164 Ohio St.3d 121, 2021-Ohio-194, 172 N.E.3d 114, ¶ 25-26.

{¶ 36} We reviewed the entire record and applicable law and find no trial court error when, on March 2, it vacated its void February 25 order after Berry filed its notice of appeal on February 24.

---

an action in aid of the appeal." Throughout that opinion the court reasoned the determination of whether, and how much, damages a jury may award are distinct issues from determining the elements of the specific torts appealed. Importantly, the court concluded that the trial court's refusal to rule, after the notice of appeal, on a pre-appeal motion for stay did not constitute prejudicial error and did not affect appellant's option to seek a stay pursuant to App.R. 7. *Id.* at 405.

16.

**{¶ 37}** Berry's fourth assignment of error is not well-taken.

## E. Unjust Enrichment

**{¶ 38}** In support of Aisling's cross-assignment of error, it argues the trial court erred by not awarding Aisling $6,003.09 in unjust enrichment damages for repairing and maintaining electricity to the walk-in freezer that preserved Berry's food, which solely benefitted Berry. Aisling further argues that it was required to "mitigate potential damages" because the repaired freezer and left-behind food were included in Berry's replevin action, although "the food items were long disposed of by agreement of the parties."

**{¶ 39}** The owner of Aisling testified at the bench trial that the electric bills submitted into evidence were for the entire premises since the sheriff sale purchase. There is only one electric meter to the premises. She testified the sole concern for initiating post-sheriff sale electric service was to preserve Berry's food left behind in the walk-in freezer during the pendency of the replevin litigation. The sole concern for the repair bill for the walk-in freezer was a refrigerant leak, which, if not repaired, would have jeopardized Berry's food inside it during the litigation.

**{¶ 40}** The trial court denied Aisling's counterclaim stating the following:

17.

[T]he Court finds that the costs to repair the walk-in freezer is not applicable since the Court finds the freezer to be a fixture. Further, the Court finds that the evidence is insufficient to award the costs of the electricity to run the freezer to maintain the frozen food. The Defendant could have allowed the removal of the food at any time, but chose not to and made their own decision to continue to keep it frozen. Further, the bills submitted were for the entirety of the electricity of the property not just the freezers. The Defendant clearly benefited from the use of electricity for the building for purposes other than food storage.

{¶ 41} We review a trial court's determination on a claim of unjust enrichment for an abuse of discretion. *Johnson's Island Property Owners' Assoc. v. Cianciola*, 6th Dist. Ottawa No. OT-20-011, 2021-Ohio-1341, ¶ 48-49. Once again, we give great deference to the trial court's factual findings stated in the record.

{¶ 42} To establish unjust enrichment, Aisling has the burden to prove it conferred a benefit on Berry, Berry had knowledge of the benefit, and the circumstances are such that it would be unjust for Berry to retain the benefit without compensating Aisling. *Sediqe v. I Make the Weather Prods., Ltd.*, 6th Dist. Lucas No. L-15-1250, 2016-Ohio-4902, ¶ 13, citing *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20. Aisling's unjust enrichment claim recovery is limited by any benefit conferred on Berry gratuitously, by the actual value of the services rendered for Berry,

18.

and by the actual amount Berry was enriched by Aisling's services. *Vaughan v. MKM of Toledo, Ltd.*, 6th Dist. Lucas No. L-03-1227, 2004-Ohio-1969, ¶ 20. A speculative claim for unjust enrichment will not prevail. *Firelands Regional Med. Ctr. v. Jeavons*, 6th Dist. Erie No. E-07-068, 2008-Ohio-5031, ¶ 33; *Tillimon v. Tate*, 6th Dist. Lucas No. L-19-1059, 2020-Ohio-4544, ¶ 29 (finding that burden not met where evidence of aggregate total of amount paid for labor costs is without adequate discernment attributed to the plumbing work claimed).

{¶ 43} We reviewed the entire record and applicable law and do not find the trial court abused its discretion when it denied Aisling's claim for unjust enrichment. We do not find the court's attitude was unreasonable, arbitrary or unconscionable.

{¶ 44} Aisling's cross-assignment of error is not well-taken.

### III. Conclusion

{¶ 45} On consideration whereof, the judgments of the Huron County Court of Common Pleas are affirmed. Berry and Aisling are ordered to equally pay the divided costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

*See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.    _____
                JUDGE

Thomas J. Osowik, J.

               _____
Myron C. Duhart, P.J.       JUDGE
CONCUR.

               _____
                JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.