[Cite as *Hoffman Properties, L.P. v. Testa*, 2015-Ohio-3931.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| HOFFMAN PROPERTIES LIMITED PARTNERSHIP | C.A. No. 14CA0041-M |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE OHIO BOARD OF TAX APPEALS COUNTY OF MEDINA, OHIO |
| JOSEPH W. TESTA, TAX COMMISSIONER OF OHIO | CASE No. 2011-1372 |
| Appellee | |

DECISION AND JOURNAL ENTRY

Dated: September 28, 2015

CARR, Judge.

{¶1} Appellant, Hoffman Properties Ltd. Partnership ("Hoffman"), appeals the decision of the Ohio Board of Tax Appeals. This Court affirms.

I.

{¶2} In 2003, Hoffman set out to build a new golf course, known as Blue Heron Golf Club, in Medina, Ohio. In furtherance of this endeavor, Hoffman hired the Wadsworth Golf Construction Co. ("Wadsworth") to handle the construction of the course. Hoffman also hired the Steve Weber Golf Company ("Weber") to construct and install an irrigation system. The material for the irrigation system was supplied by Century Equipment.

{¶3} On August 6, 2009, a notice of assessment was sent to Hoffman, asserting that all amounts paid to Wadsworth and Weber were subject to use tax. Century Equipment paid all applicable sales tax and was removed from the Tax Commissioner's audit list. In regard to

Wadsworth and Weber, Hoffman objected to the assessment and the matter proceeded to a hearing in 2010, before a representative from the office of chief counsel. On May 19, 2011, a final determination was issued by the Tax Commissioner, whereby the objection pertaining to Wadsworth was allowed; and those transactions were removed from the tax assessment. With respect to Weber and the installation of the irrigation system, however, Hoffman's objection was denied.

{¶4} Hoffman appealed the final determination of the Tax Commissioner to the Ohio Board of Tax Appeals ("BTA"). On April 29, 2014, the BTA issued its decision and order affirming the Tax Commissioner's final determination on the basis that the irrigation system was considered a business fixture pursuant to R.C. 5701.03(B). Hoffman appealed the Board's decision to this Court.

{¶5} On appeal, Hoffman raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE OHIO BOARD OF TAX APPEALS ERRED IN AFFIRMING THE FINAL
DETERMINATION OF THE TAX COMMISSIONER.

{¶6} In its assignment of error, Hoffman argues that the Ohio Board of Tax Appeals erred in affirming the Tax Commissioner's determination that the irrigation system installed at Blue Heron constituted a business fixture. This Court disagrees.

{¶7} Hoffman argues on appeal that the monies expended to Weber for the installation of the irrigation system in conjunction with the construction of Blue Heron Golf Club are not taxable. Hoffman maintains that the irrigation system should be considered real property for tax purposes because it has become affixed to the land pursuant R.C. 5701.02(A), and that the BTA erred in concluding that the irrigation system is a business fixture as defined by R.C. 5701.03(B).

{¶8} Hoffman acknowledges that the facts of this case are not in dispute. Our review of a decision and order by the BTA is governed by R.C. 5717.04, which states, in relevant part:

> The proceeding to obtain a reversal, vacation, or modification of a decision of the board of tax appeals shall be by appeal to the supreme court or the court of appeals for the county in which the property taxed is situate[.] * * * If upon hearing and consideration of such record and evidence the court decides that the decision of the board appealed from is reasonable and lawful it shall affirm the same, but if the court decides that such decision of the board is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter final judgment in accordance with such modification.

{¶9} The Supreme Court recently addressed the distinction between business fixtures and fixtures on real property in *Metamora Elevator Co. v. Fulton Cty. Bd. of Revision*, Slip Opinion No. 2015-Ohio-2807. The distinction is significant because business fixtures are classified as personal property and are not subsumed within the real property tax assessment. *Metamora* at ¶ 18. "R.C. 5701.02, relating to real property, defines real property in section (A) to include 'land itself * * * and, unless otherwise specified in this section or section 5701.03 of the Revised Code, all buildings, structures, improvements, and *fixtures* of whatever kind on the land.' (Emphasis added.)" *Metamora* at ¶ 22. A "fixture" on real property is defined as "an item of tangible personal property that has become permanently attached or affixed to the land or to a building, structure, or improvement, and that primarily benefits the realty and not the business, if any, conducted by the occupant on the premises." R.C. 5701.02(C). The two categories of property that are "otherwise specified" for taxation purposes are personal property and business fixtures. R.C. 5701.03. A "business fixture" is defined by R.C. 5701.03(B) as "an item of tangible personal property that has become permanently attached or affixed to the land * * * and that primarily benefits the business conducted by the occupant on the premises and not the realty." In reconciling this statutory scheme, the Supreme Court recognized that "[i]t is

apparent that the General Assembly has expressed its intent that fixtures are real property and that business fixtures are personal property[.]" *Metamora* at ¶ 23.

{¶10} Prior to its decision in *Metamora*, the Supreme Court of Ohio addressed the interaction between R.C. 5701.02 and R.C. 5701.03 in *Funtime, Inc. v. Wilkins*, 105 Ohio St.3d 74, 2004-Ohio-6890, ¶ 33, stating:

> Reading the two statutes in pari materia and harmonizing them to give effect to the language of both statutes, we find that the correct order of application is as follows: first, determine whether the item meets the requirements of one of the definitions of real property set forth in R.C. 5701.02. If the item does not, then it is personal property. If the item fits a definition of real property in R.C. 5701.02, it is real property unless "otherwise specified" in R.C. 5701.03. If an item is "otherwise specified" under R.C. 5701.03, it is personal property.

{¶11} In *Metamora*, however, the Supreme Court clarified its *Funtime* decision and noted that the question of whether an item constitutes real property or a business fixture "does not necessarily require a two-step analysis with initial consideration given to the definition of 'real property' in all instances." *Metamora* at ¶ 24. The high court underscored that even in *Funtime*, it recognized that the primary use of the amusement park station house at issue was to provide patrons with a way to enter and exit the roller coaster, and that no use independent of the amusement park business was shown for the station house. *Metamora* at ¶ 24, quoting *Funtime* at ¶ 46. The Supreme Court went on to conclude that "even if we assume that the [roller coaster] station house is a building as defined in R.C. 5701.02(B), it is 'otherwise specified' in R.C. 5701.03(B) and must be classified as a business fixture." *Metamora* at ¶ 24, quoting *Funtime* at ¶ 46. Thus, the Supreme Court acknowledged in *Metamora* that "in *Funtime* we did not strictly apply the two-step analysis that we announced in paragraph 33" due to the fact that the item in question was "otherwise specified" because it fit the definition of business fixture. *Id.*

{¶12} Here, the BTA determined that the irrigation system at Blue Heron did not constitute real property because it was "otherwise specified" as a business fixture as defined by R.C. 5701.03(B). In reaching this conclusion, the Board stated, "[c]learly, such specialized irrigation system was designed and installed to address the unique needs associated with the operation of a golf course and to primarily benefit the ongoing business conducted on the land, i.e. the golf course." The BTA also found that Hoffman separately purchased the irrigation pipes and materials, lending support to its determination that the contract with Weber could not be construed as a construction contract because it dealt squarely with the installation of business fixtures.

{¶13} In his merit brief, Hoffman's argument is predicated on the BTA's decision in *Inverness Club v. Wilkens*, BTA No. 2004-R-338, 2007 WL 1453730 (May 11, 2007). Hoffman asserts that the *Inverness* decision stands for the proposition that a golf course irrigation system is not a business fixture as defined by R.C. 5701.03(B), but instead is a fixture that has become affixed to the land under R.C. 5701.02, and is thus considered to be realty and non-taxable.[1] Hoffman further cites *Inverness* for the proposition that golf course renovations are improvements to the land for the purposes of Section 2, Article XII of the Ohio Constitution, necessitating that they be considered part of the land for tax purposes.

{¶14} A review of the BTA's decision in *Inverness* reveals several key distinctions from the case at bar. While this case deals with the installation of an irrigation system in conjunction with the construction of a new golf course, the *Inverness* case dealt with modernizing and

---

[1] The appellee relies on *SSN II, Ltd. v. Warren Cty. Bd. of Revision*, 12th Dist. Warren No. CA2012-04-037, 2013-Ohio-1112, in support of the proposition that golf course sprinkler systems are considered business fixtures. While the Twelfth District noted that the common pleas court in that case reached that conclusion, the court did not ultimately reach the issue because the appellants did not include a separate valuation for the sprinkler systems in the record.

improving a golf course that was founded in 1903 and had hosted six major championships at the time the club undertook renovations in the late 1990s. *Inverness* at *1. After consulting the United States Golf Association, Inverness retained "a noted golf course architect" who sought "to improve playability, to improve drainage, and to change the difficulty level." *Id*. The club then hired a construction company to implement the plan. The extensive renovations featured excavation of thousands of tons of dirt and entirely relocating a hill, reconstructing tee boxes, installing tee drainage, realigning fairways, relocating and reshaping numerous bunkers, completely reconstructing one hole, and installing new irrigation on fifteen holes. The question addressed by the BTA in *Inverness* was "whether the reconstruction of a golf course equates to landscaping and lawn care services" for tax purposes. *Inverness* at *4. The BTA ultimately resolved this question in the negative, concluding that the services supplied to Inverness by the construction company should be characterized as construction, not landscaping. *Id*.

{¶15} Hoffman's reliance on *Inverness* in support of his statutory and constitutional arguments is misguided. As the BTA explicitly stated in its decision in this case, its prior decision in *Inverness* "made no conclusions with regard to whether the irrigation system constituted a business fixture, pursuant to R.C. 5701.03." While the BTA in *Inverness* determined that the renovation project constituted "site improvements" to the real estate, it considered the renovations in their entirety and did not specifically analyze the irrigation system. *Id*. at *6. Instead, the BTA observed that the "changes to the land in renovating this golf course have no physical existence separate and apart from the land itself" and concluded that "it is unnecessary to consider whether or not the renovations 'primarily benefit the business conducted' on the property because these items fail to constitute an item of personal property[.]" *Inverness* at *6. Thus, as the BTA recognized in this case, the *Inverness* decision is not

controlling because that case did not involve a specific determination regarding whether an irrigation system constitutes a business fixture as defined in R.C. 5701.03(B).

{¶16} Our review of the evidence before the BTA lends further support to the conclusion that its decision was reasonable and lawful. While Hoffman argues that removing the irrigation system would cause injury to the land, we draw a distinction between the damage caused by the removal of an irrigation system and undoing "permanent fabrication and construction to the property" as was discussed in *Inverness*. *Inverness* at *6. Though removing an irrigation system would undoubtedly result in temporary damage, such damage could be repaired. Furthermore, it is apparent from the record that the installation of the irrigation system was separate from the construction of the golf course with the primary intent of benefitting the business. As noted by the Tax Commissioner, "[g]olf course irrigation systems are specialized and sophisticated irrigation systems" and are "not [akin to] more extensive residential sprinkler systems." The irrigation installation agreement indicates that Weber was "knowledgeable and experienced in the construction of and installation of automated irrigation systems for golf courses." Golf course irrigation systems are designed for the specific purpose of enhancing playability and are aimed at meeting the varying water and fertilization needs of the different types of turf found on a golf course. The Tax Commissioner further found that a sophisticated irrigation system decreases the need for spot watering and manual turf care, thereby improving business by minimizing player inconvenience and increasing customer satisfaction. Significantly, Hoffman has not identified an independent use of the irrigation system distinct from the golf course business, meaning that even if we assume that the irrigation system could fit within a definition of real property set forth R.C. 5701.02(B), it is "otherwise specified" in R.C. 5701.03(B) and must be classified as a business fixture. *Funtime* at ¶ 46.

{¶17} Hoffman's assignment of error is overruled.

III.

{¶18} Hoffman's assignment of error is overruled. The decision of the Ohio Board of Tax Appeals is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Ohio Board of Tax Appeals, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT


HENSAL, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

DENNIS A. ROTMAN, Attorney at Law, for Appellant.

MICHAEL DEWINE, Attorney General, and SOPHIA HUSSAIN, Assosicate Assistant Attorney General, for Appellee.