[Cite as *Viola Assocs., L.L.C. v. Lorain Cty. Bd. of Revision*, 2021-Ohio-991.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

VIOLA ASSOCIATES, LLC, et al.

    Appellees

    v.

LORAIN COUNTY BOARD OF
REVISION, et al.

    Appellants

C.A. Nos.    18CA011386
                18CA011387


APPEAL FROM JUDGMENT
ENTERED IN THE
OHIO BOARD OF TAX APPEALS
COUNTY OF LORAIN, OHIO
CASE Nos.   2016-1273, 2016-1274,
              2016-1275

DECISION AND JOURNAL ENTRY

Dated: March 29, 2021

TEODOSIO, Presiding Judge.

{¶1} The Firelands Local School District Board of Education ("Firelands BOE"), and the Lorain County Auditor and the Lorain County Board of Revision (collectively, "Lorain County") appeal the decision of the Ohio Board of Tax Appeals. We affirm.

I.

{¶2} Viola Associates, LLC, and Green Circle Growers Inc. (collectively, "Green Circle") are the owners of property located in Camden Township, Ohio. The subject property consists of approximately 186 acres of land and includes a single-family home and facilities associated with Green Circle's commercial horticulture business, including large greenhouses. In 2016, Green Circle appealed a decision by the Lorain County Board of Revision assessing the value of the subject real property to the Ohio Board of Tax Appeals ("BTA"). The primary issue on appeal was whether the greenhouses located on the subject property should be treated as real

property and included in the assessment of the real property value, or be treated as personal property that would be excluded from the subject real property's value for purposes of ad valorem taxation.

{¶3} At a hearing before the BTA, Lorain County presented the testimony and written report of its appraiser, Ronald N. Geer, supporting the theory that the subject greenhouses should be treated as real property and thereby included in the valuation of the real property. Green Circle provided the testimony and appraisal of Samuel D. Koon, who concluded that the greenhouses should be considered personal property and therefore excluded from the valuation of the real property.

{¶4} The BTA subsequently issued its decision concluding that the greenhouses in question should be treated as personal property and excluded from the valuation of the subject real property. In so doing, the BTA concluded that the cost analysis offered by Mr. Koon offered the most reliable indication of value for the agricultural components and that his sales comparison approach formed a reliable basis for determining the value of the residential portion of the property. It is from this decision that the Firelands BOE and Lorain County now appeal, filing separately their briefs and assignments of error, which are addressed separately below.

II.

A. The Firelands BOE Appeal

We first address the ten assignments of error filed and briefed by the Firelands BOE.

ASSIGNMENT OF ERROR ONE

THE BTA ACTED UNREASONABLY AND UNLAWFULLY, AND ABUSED ITS DISCRETION IN CONSIDERING THE GREENHOUSES ON THE SUBJECT PROPERTY EXCLUDED FROM THE SUBJECT'S VALUE FOR PURPOSES OF AD VALOREM TAXATION AS OPPOSED TO REAL PROPERTY INCLUDED IN THE ASSESSMENT OF THE SUBJECT'S TOTAL TRUE VALUE.

{¶5} In its first assignment of error, the Firelands BOE contends that the BTA erred by finding the greenhouses at issue to be personal property rather than real property. Under this assignment of error, the Firelands BOE sets forth the standard of review and generally states their position that the BTA erred in finding the subject greenhouses to be personal property rather than real property. It does not, however, make any specific legal argument that would be reviewable by this Court. Rather, it serves as an introduction to assignments of error that follow.

{¶6} Because it does not constitute an assignment of error, the Firelands BOE's first assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

THE BTA ACTED UNREASONABLY AND UNLAWFULLY, AND ABUSED ITS DISCRETION WHEN IT DETERMINED THAT THE GREENHOUSES ON THE SUBJECT PROPERTY DESIGNED TO SHELTER PLANTS, SOPHISTICATED MACHINERY AND EQUIPMENT, AND TO PROTECT WORKERS ARE NOT BUILDINGS, STRUCTURES OR IMPROVEMENTS AS DEFINED BY [R.C.] 5701.02.

{¶7} In its second assignment of error, the Firelands BOE argues that the BTA should have determined that the greenhouses at issue constituted "buildings," "structures," or "improvements" under R.C. 5701.02, and therefore should have been treated as real property. We disagree.

{¶8} We review BTA decisions only to determine whether they are "reasonable and lawful." R.C. 5717.04. This Court will defer to the BTA's factual findings, including determinations of a property's value, as long as they are supported by "reliable and probative" evidence in the record. *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 141 Ohio St.3d 243, 2014-Ohio-4723, ¶ 21. "The BTA's legal determinations, however, are subject to de novo review." *Id.*

{¶9}    R.C. 5701.02 provides the following definitions relating to real property as used in Title LVII of the Ohio Revised Code:

(A) "Real property," "realty," and "land" include land itself, whether laid out in town lots or otherwise, all growing crops, including deciduous and evergreen trees, plants, and shrubs, with all things contained therein, and, unless otherwise specified in this section or section 5701.03 of the Revised Code, all buildings, structures, improvements, and fixtures of whatever kind on the land, and all rights and privileges belonging or appertaining thereto.  * * *.

(B)(1) "Building" means a permanent fabrication or construction, attached or affixed to land, consisting of foundations, walls, columns, girders, beams, floors, and a roof, or some combination of these elemental parts, that is intended as a habitation or shelter for people or animals or a shelter for tangible personal property, and that has structural integrity independent of the tangible personal property, if any, it is designed to shelter.  * * *.

* * *

(C) "Fixture" means an item of tangible personal property that has become permanently attached or affixed to the land or to a building, structure, or improvement, and that primarily benefits the realty and not the business, if any, conducted by the occupant on the premises.

(D) "Improvement" means, with respect to a building or structure, a permanent addition, enlargement, or alteration that, had it been constructed at the same time as the building or structure, would have been considered a part of the building or structure.

(E) "Structure" means a permanent fabrication or construction, other than a building, that is attached or affixed to land, and that increases or enhances utilization or enjoyment of the land. "Structure" includes, but is not limited to, bridges, trestles, dams, storage silos for agricultural products, fences, and walls.

{¶10}   Likewise, R.C. 5701.03 sets forth definitions relating to personal property:

(A) "Personal property" includes every tangible thing that is the subject of ownership, whether animate or inanimate, including a business fixture, and that does not constitute real property as defined in section 5701.02 of the Revised Code. "Personal property" also includes every share, portion, right, or interest, either legal or equitable, in and to every ship, vessel, or boat, used or designed to be used in business either exclusively or partially in navigating any of the waters within or bordering on this state, whether such ship, vessel, or boat is within the jurisdiction of this state or elsewhere. "Personal property" does not include money as defined in section 5701.04 of the Revised Code, motor vehicles registered by the owner

thereof, electricity, or, for purposes of any tax levied on personal property, patterns, jigs, dies, or drawings that are held for use and not for sale in the ordinary course of business, except to the extent that the value of the electricity, patterns, jigs, dies, or drawings is included in the valuation of inventory produced for sale.

(B) "Business fixture" means an item of tangible personal property that has become permanently attached or affixed to the land or to a building, structure, or improvement, and that primarily benefits the business conducted by the occupant on the premises and not the realty. "Business fixture" includes, but is not limited to, machinery, equipment, signs, storage bins and tanks, whether above or below ground, and broadcasting, transportation, transmission, and distribution systems, whether above or below ground. "Business fixture" also means those portions of buildings, structures, and improvements that are specially designed, constructed, and used for the business conducted in the building, structure, or improvement, including, but not limited to, foundations and supports for machinery and equipment. "Business fixture" does not include fixtures that are common to buildings, including, but not limited to, heating, ventilation, and air conditioning systems primarily used to control the environment for people or animals, tanks, towers, and lines for potable water or water for fire control, electrical and communication lines, and other fixtures that primarily benefit the realty and not the business conducted by the occupant on the premises.

{¶11} Under this assignment of error, the Firelands BOE argues that the BTA erred when it determined that the greenhouses at issue were not "buildings," "structures," or "improvements" as defined by R.C. 5701.02. It contends that the greenhouses "have all the statutory characteristics of a building or structure and should be treated as real property." The problem with this line of argument is that even if we were to conclude that it has merit, and that the greenhouses at issue met the statutory definitions of "buildings" or "structures" under R.C. 5701.02, the outcome of the BTA's decision, and our analysis on appeal, would not change. Due to the binding precedent discussed below, the effect of any such error would be harmless.

{¶12} In *Funtime, Inc. v. Wilkins*, 105 Ohio St.3d 74, 2004-Ohio-6890, the Supreme Court of Ohio engaged in an analysis of property for tax purposes under R.C. 5701.02 and R.C. 5701.03. Funtime, Inc. operated an amusement park, and its appeal involved the tax status of certain rides located within the amusement park, as well as the station houses for the rides. *Id.* at ¶ 2. One of

the rides, given the ominous moniker of "Mind Eraser," was essentially a roller coaster with a station house from which patrons could enter and exit the ride. *Id.* at ¶ 4-5. The tax commissioner issued an assessment classifying the rides as personal property. *Id.* at ¶ 7. The BTA affirmed the assessment, finding that the rides were business fixtures and therefore personal property. *Id.* at ¶ 8.

{¶13} On appeal, Funtime, Inc. argued that the Mind Eraser station house met the definition of a "building" under R.C. 5701.02, and therefore should be classified as real property. *Id.* at ¶ 30-31. This is in essence the same argument the Firelands BOE raises under its second assignment of error. In its analysis of the argument, the Supreme Court of Ohio stated:

> Assuming for the purposes of discussion that the Mind Eraser station house can be considered separate from the ride itself and can be separately classified as a building, we must still consider whether it is "otherwise specified." The definition of "business fixture" in R.C. 5701.03(B) includes "an item of tangible personal property that has become permanently attached or affixed to the land * * * and that primarily benefits the business conducted by the occupant on the premises and not the realty." The primary use of the Mind Eraser station house is to provide a way for patrons to enter and exit Mind Eraser. No use independent of the amusement-park business was shown for the Mind Eraser station house. Therefore, even if we assume that the Mind Eraser station house is a building as defined in R.C. 5701.02(B), it is "otherwise specified" in R.C. 5701.03(B) and must be classified as a business fixture.

*Id.* at ¶ 46. The Court set forth the process of analysis of R.C. 5701.02 and R.C. 5701.03 as follows:

> Reading the two statutes in pari materia and harmonizing them to give effect to the language of both statutes, we find that the correct order of application is as follows: first, determine whether the item meets the requirements of one of the definitions of real property set forth in R.C. 5701.02. If the item does not, then it is personal property. If the item fits a definition of real property in R.C. 5701.02, it is real property unless it is "otherwise specified" in R.C. 5701.03. If an item is "otherwise specified" under R.C. 5701.03, it is personal property.

*Id.* at ¶ 33.

{¶14}  In accordance with *Funtime*, even if we were to agree with the Firelands BOE that the greenhouses met the definition of "buildings," "structures," or "improvements" as defined in R.C. 5701.02(B), it would not preclude their classification as business fixtures under R.C. 5701.03(B).  We note that it is their classification as "business fixtures" that is the subject of our analysis under the fourth assignment of error.

{¶15}  The Firelands BOE's second assignment of error is overruled.

ASSIGNMENT OF ERROR THREE

THE BTA ACTED UNREASONABLY AND UNLAWFULLY, AND ABUSED ITS DISCRETION WHEN IT DETERMINED THAT THE GREENHOUSES ON THE SUBJECTY PROPERTY ARE "FIXTURES" AS DEFINED BY [R.C.] 5701.02.

{¶16}  In its third assignment of error, the Firelands BOE argues the BTA erred in determining that the greenhouses were fixtures.  We disagree.

{¶17}  In its decision, prior to determining that the subject greenhouses were "business fixtures" and therefore constituted personal property, the BTA determined that the greenhouses met the definition "fixtures" under R.C. 5701.02.  As we discussed above, and in accordance with the precedent established by *Funtime*, a determination that property meets the statutory definition of a "building," "structure," "improvement," or a "fixture" is not determinative of its status as real property versus personal property because it may be "otherwise specified" in R.C. 5701.03(B).  *Id.* at ¶ 46.  To the extent that the subject greenhouses were classified as "fixtures," any potential error in that determination was harmless, as it was their classification as "business fixtures" that removed them from the category of taxable real property.  Indeed, had they only been classified as "fixtures," but not as "business fixtures," the greenhouses would have constituted taxable real property.

{¶18}  The Firelands BOE's third assignment of error is overruled.

ASSIGNMENT OF ERROR FOUR

THE BTA ACTED UNREASONABLY AND UNLAWFULLY, AND ABUSED ITS DISCRETION WHEN IT DETERMINED THAT THE GREENHOUSES ON THE SUBJECTY PROPERTY ARE "BUSINESS FIXTURES" AS DEFINED BY [R.C.] 5701.03.

{¶19} In its fourth assignment of error, the Firelands BOE argues the BTA erred by determining that the subject greenhouses were "business fixtures" under R.C. 5701.03. We disagree.

{¶20} As stated above, R.C. 5701.03(B) defines "business fixture" as "an item of tangible personal property that has become permanently attached or affixed to the land or to a building, structure, or improvement, and that primarily benefits the business conducted by the occupant on the premises and not the realty." In *Funtime*, the Supreme Court of Ohio set forth its understanding of the analysis required by the statutory framework set forth in R.C. 5701.02 and R.C. 5701.03, stating: "Although we previously abandoned any consideration of the appropriation-to-use test * * * for classifying property, the General Assembly has reinstated that test for determining whether a structure is real or personal property." *Funtime* at ¶ 36. "The decisive test of appropriation is whether the chattel under consideration in any case is devoted primarily to the business conducted on the premises, or whether it is devoted primarily to the use of the land upon which the business is conducted." *Id.* at ¶ 38, quoting *Zangerle v. Std. Oil Co. of Ohio*, 144 Ohio St. 506 (1945), paragraph four of the syllabus.

{¶21} In concluding that the amusement park rides were business fixtures, the Supreme Court of Ohio stated:

> The evidence presented to the BTA showed that the rides in question were installed to attract customers for the amusement-park business. The fact that the customers enjoy the rides has nothing to do with whether the rides benefit the land. There was no evidence that the rides would be of any benefit to a buyer of the land who engaged in a different business. Grizzly Run and Mind Eraser do not meet the

definition of "structure" set forth in R.C. 5701.02(E) but do meet the definition of "business fixture" set forth in R.C. 5701.03(B) because they primarily benefit the business conducted by the occupant on the premises and not the realty.

*Id.* at ¶ 41. Regardless of whether the subject greenhouses are classified as "fixtures" under R.C. 5701.02 as the BTA concluded, or whether they should be classified as "buildings" or "structures" under R.C. 5701.02 as the Firelands BOE argues, the determinative issue is whether they are "otherwise specified" in R.C. 5701.03 and are classifiable as "business fixtures."

{¶22} In its decision, the BTA stated:

There is no dispute that the subject greenhouses are used for Green Circle Growers' commercial horticulture business. The greenhouses are outfitted with computer systems, shade cloths, irrigation systems, retractable roofs, and a number of other components that are specific to the sophisticated operation taking place at the property. Neither of the appellee parties has pointed to an alternative use for any of these items that would benefit the land or any other occupant of the property that was not engaged in a commercial horticulture business. Thus, at the very least, these items should be excluded from the value of the real property, though they were included in Geer's conclusion of value.

The remaining physical components that join to form the walls and roof of the greenhouse are also business fixtures and should be excluded from the value of the real property. The county appellees have suggested that a greenhouse may have an alternative use beyond horticulture, such as shelter for a box of tools or a boat. There has been no evidence to show that these hypothetical alternative uses occur in practice. Green Circle Growers, on the other hand, presented testimony from multiple individuals to demonstrate that the greenhouses in question were designed especially for growing plants, and that in their experience, even a second-hand greenhouse would be used only for horticulture. Accordingly, we find that the greenhouses primarily benefit Green Circle Growers' horticulture business and would provide little value, if any, to another occupant of the land who was not engaged in the same or very similar business. We conclude, therefore, that the greenhouses are business fixtures and should be excluded from the value of the real property.

{¶23} In support of its argument, the Firelands BOE relies upon an administrative decision from the Board of Tax Appeals: *Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, BTA No. 2004-V-1294 (Jan. 26, 2007), *rev'd on other grounds*, 118 Ohio St.3d 330, 2008-Ohio-2454, and likewise points to other cases following the analysis set forth in *Polaris*. *See*

*SSN II, Ltd. v. Warren Cty. Bd. of Revision*, 12th Dist. Warren No. CA2012-04-037, 2013-Ohio-1112; *Palace Hotels, LLC v. Testa*, BTA No. 2016-1300 (Mar. 5, 2018). In *Polaris*, the BTA determined that the subject amphitheater stage and facilities constituted buildings, improvements, or structures as defined by R.C. 5701.02 and were therefore real property. *Polaris* at \*6. Once this determination was made, the *Polaris* decision concluded it was not necessary for the BTA to further engage in an analysis of whether the subject property was "otherwise specified" as a "business fixture" under R.C. 5701.03. *Id.* Thus, under the *Polaris* approach, if the subject greenhouses meet any of the definitions of real property under R.C. 5701.02, they cannot constitute "fixtures" or "business fixtures" and it is therefore irrelevant whether they primarily benefit the business conducted by the occupant. *Id.*

{¶24} The Firelands BOE likewise argues that once such a determination was made, it was not necessary for the BTA to further engage in an analysis of whether the subject property was "otherwise specified" R.C. 5701.03. This conclusion, however, is inconsistent with the approach elaborated by the Supreme Court of Ohio in *Funtime*: "If the item fits a definition of real property in R.C. 5701.02, it is real property unless it is 'otherwise specified' in R.C. 5701.03. If an item is 'otherwise specified' under R.C. 5701.03, it is personal property." *Funtime* at ¶ 33. We note that in its *Funtime* decision, the Supreme Court of Ohio directly addressed and rejected the argument set forth in *Polaris* and now adopted by the Firelands BOE:

> Under Funtime's interpretation, if an item meets the definition of "building" set forth in what is now R.C. 5701.02(B)(1), the analysis goes no further; the item would be classified as real property. As a result, the words "unless otherwise specified" in R.C. 5701.02 would be totally ignored if the property meets one of the definitions in R.C. 5701.02. The consequence of Funtime's interpretation would be to return to the analysis the General Assembly was apparently trying to change by enacting Sub.S.B. No. 272. Funtime's interpretation requires classifying an entity defined as real property under R.C. 5701.02 as real property even if it is "otherwise specified" as being personal property in R.C. 5701.03.

* * *

> Following Funtime's proposed procedure for applying R.C. 5701.02 and 5701.03 would not produce the result intended by the General Assembly when it amended R.C. 5701.02 and 5701.03.

*Id.* at ¶ 31-33. Under *Funtime*, it is thus apparent that a determination that the subject property is real property under R.C. 5701.02 is not conclusive; the property may yet be found to be "otherwise specified" under R.C. 5701.03.

{¶25} We further note that we share the concern expressed by the Board of Tax Appeals in *Polaris* that is a potential consequence of the *Funtime* decision:

> If we were to accept [this] argument, the definition of business fixture would necessarily eclipse all the definitions of real property found in R.C. 5701.02 and require that all buildings, structures and improvements (e.g., car washes, office buildings, retail stores, banks, gas stations, indoor and outdoor arenas) be classified as personal property solely because they are all used for a commercial purpose. We fail to read the statutory enactments and the court's holdings to produce this result.

*Polaris* at *6. We fail to see, however, any adequate path that would allow us to reconcile the *Polaris* decision with the analysis set forth in *Funtime*. Even if this Court were to agree with the analysis offered by *Polaris*, to the extent that it is in conflict with *Funtime*, we are bound to follow the precedent of the Supreme Court of Ohio.

{¶26} The Firelands BOE's fourth assignment of error is therefore overruled.

ASSIGNMENT OF ERROR FIVE

THE BTA ACTED UNREASONABLY AND UNLAWFULLY, AND ABUSED ITS DISCRETION BY FAILING TO RECOGNIZE THE GREENHOUSES ON THE SUBJECT PROPERTY TO BE STRUCTURES ERECTED ON THE LAND AND ATTACHED TO THE REALTY AS WAS PREVIOUSLY DETERMINED IN GREEN CIRCLE GROWERS, INC. V. LORAIN CTY. BD. OF REVISION * * *.

{¶27} In its fifth assignment of error, the Firelands BOE argues the BTA erred by failing to recognize greenhouses as structures defined as real property as determined in *Green Circle Growers, Inc. v. Lorain Cty. Bd. of Revision*, 35 Ohio St.3d 38 (1988). We disagree.

{¶28} Although *Green Circle* held "that a greenhouse attached to metal pipes which are imbedded in concrete is a structure and therefore defined as real property," the decision predates the amendments made to R.C. 5701.02 and R.C. 5701.03. *Id.* at 40. As noted by the Supreme Court of Ohio in *Metamora Elevator Co. v. Fulton Cty. Bd. of Revision*, the General Assembly amended the definitions of "real property" and "personal property" in 1992. 143 Ohio St.3d 359, 2015-Ohio-2807, ¶ 21. These amendments included definitions for "building," "fixture," "improvement," "structure," and "business fixture" that were specifically added by Sub.S.B. No. 272. Because these definitions are essential to the matter before us for review and were added subsequent to the *Green Circle* decision, the analysis by the *Green Circle* Court offers us little in the way of guidance. As addressed in *Metamora Elevator*, the distinction between real property and personal property had become elusive within the line of cases examining that distinction, and of which *Green Circle* was a part. *Id.* at ¶ 20. In 1992 the General Assembly amended the definitions of "real property" and "personal property" in a manner that resolved the issue and harmonized the definition of "real property" in R.C. 5701.02 with the definition of "personal property" in R.C. 5701.03. *Id.* at ¶ 21. Because these definitions create a new framework for the analysis of the distinction between real property and personal property, they have superseded the analysis performed in *Green Circle*.

{¶29} The Firelands BOE's fifth assignment of error is overruled.

ASSIGNMENT OF ERROR SIX

THE BTA ABUSED ITS DISCRETION AND ACTED UNREASONABLY, UNLAWFULLY AND ARBITRARILY IN FAILING TO CONSIDER A

"SPECIAL PURPOSE EXCEPTION" TO THE PROHIBITION AGAINST VALUATION BASED ONLY ON CURRENT USE.

{¶30} In its sixth assignment of error, the Firelands BOE argues the BTA erred by not analyzing the greenhouses as "special purpose" property. We disagree.

{¶31} Under this assignment of error, the Firelands BOE provides caselaw describing and referencing the "special purpose" doctrine of property valuation, followed by the generalized statement that the greenhouses fit the definition of "special purpose" property and should have been analyzed as such.

{¶32} As we determined above, the BTA did not err in finding the subject greenhouses to constitute personal property. Because the Firelands BOE's proposed application of the "special purpose" doctrine applies to real property valuation, and not personal property, we find this argument inapplicable. Therefore, the BTA did not err, as it was not required to examine what it had already determined to be personal property under a doctrine reserved for real property valuation.

{¶33} The Firelands BOE's sixth assignment of error is overruled.

ASSIGNMENT OF ERROR SEVEN

THE BTA ACTED UNREASONABLY AND UNLAWFULLY, AND ABUSED ITS DISCRETION, BY FINDING THE APPRAISAL SUBMITTED BY APPELLEE VIOLA ASSOCIATES, INC. AND GREEN CIRCLE GROWERS, INC., TO BE MORE COMPETENT AND PROBATIVE EVIDENCE OF THE SUBJECT PROPERTY'S FAIR MARKET VALUE THAN THE APPRAISAL ANALYSIS PROFFERED BY APPELLANT LORAIN COUNTY BOARD OF REVISION.

{¶34} In its seventh assignment of error, the Firelands BOE argues the BTA erred by finding the appraisal offered by Green Circle Growers to be more competent and probative evidence of fair market value that the appraisal offered by the Lorain County BOR. We disagree.

{¶35} With respect to the valuation of real property, it is the "BTA's task * * * to determine the fair market value of the property[,]" and that issue is "a question of fact, the determination of which is primarily within the province of the taxing authorities." *DAK, PLL v. Franklin Cty. Bd. of Revision*, 105 Ohio St.3d 84, 2005-Ohio-573, ¶ 14. In reviewing the BTA's disposition of the factual issues in a property valuation case, "[t]his court does not sit either as a super BTA or as a trier of fact de novo." *Id.* at ¶ 16.

{¶36} Where the parties present competing appraisals, the BTA is vested with wide discretion in determining the credibility of the witnesses and weighing the evidence before it. *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 412, 2016-Ohio-1506, ¶ 28. The BTA's decision to find one appraisal more probative than another appraisal and to adopt a land value in one appraisal over the land value in another appraisal is reviewed for an abuse of discretion. *Id.* at ¶ 27. An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude. *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 153 Ohio St.3d 241, 2017-Ohio-8385, ¶ 7.

{¶37} Ronald Geer provided the appraisal of the subject property on behalf of Lorain County, while Samuel Koon provided an appraisal on behalf of Green Circle Growers. In choosing Mr. Koon's appraisal over Mr. Geer's, the BTA stated:

> In the present appeal, the difference between the approaches of the appraisers relate to their underlying perspectives on the characterization of the greenhouses. Although both performed the cost and sales-comparison approaches to value, Koon did not give any contributory value to the greenhouses situated on the subject property. Geer, on the other hand, considered not only the value of the structural components of the greenhouse (i.e., walls, roof, etc.), but also "agricultural extras," such as shades, irrigation, fertilization, and computer systems. Because we find that the greenhouses in question qualify as personal property and should be excluded from the value of real property, we find that Koon's appraisal provides the most reliable evidence of the proper value of the subject property as of the tax lien date.

The BTA further concluded:

> Because Geer included the greenhouses as real property in his analysis, we disregard his appraisal in its entirety. Even if we were to remove the value assigned to the greenhouses in his cost approach, we find it would produce an unreliable result as it underestimates the functional obsolescence created by the unique configuration of the real property. Additionally, due to this unique configuration and considerable amount of concrete, we find that a cost analysis is most reliable for the agricultural portion of the property, recognizing that Koon's sales-comparison approach played a role in determining the appropriate effect of functional and external obsolescence.

{¶38} In support of its argument that the BTA erred in choosing Mr. Koon's appraisal over that of Mr. Geer, Firelands BOE states that Mr. Geer had "unparalleled experience appraising greenhouses[,]" had "superior experience and knowledge of the greenhouse market[,]" and had "personal knowledge of at least three greenhouses." Firelands BOE further states that "[d]espite his 45 years of experience appraising greenhouses and his reputation as one of the nation's leading experts in this area, Mr. Geer's opinion was summarily dismissed by the BTA with no analysis."

{¶39} We find no abuse of discretion in the BTA's decision to disregard Mr. Geer's appraisal due to its reliance upon treating the subject greenhouses as real property. Because the BTA had made the determination to categorize the greenhouses as personal property, it was not unreasonable for it to conclude that Mr. Geer's appraisal was less reliable than Mr. Koon's appraisal because Mr. Geer's valuation included the greenhouses. Likewise, we do not find it unreasonable for the BTA to have concluded that even if it were to have removed the value assigned to the greenhouses in Mr. Geer's valuation, it would have produced an unreliable result because it underestimated the functional obsolescence created by the unique configuration of the real property. The valuation of property is committed to the BTA's authority, and the BTA did not abuse its discretion in choosing one appraisal over another. *See Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, ¶ 27.

{¶40} The Firelands BOE's seventh assignment of error is overruled.

ASSIGNMENT OF ERROR EIGHT

THE BTA ACTED UNREASONABLY AND UNLAWFULLY, AND ABUSED ITS DISCRETION, BY ACCEPTING THE HIGHEST AND BEST USE ANALYSIS CONTAINED IN THE APPRAISAL SUBMITTED BY APPELLEE VIOLA ASSOCIATES, INC. AND GREEN CIRCLE GROWERS.

{¶41} In its eighth assignment of error, the Firelands BOE argues that the BTA erred in accepting the highest and best use analysis of Mr. Koon's appraisal. We disagree.

{¶42} We again note that in reviewing the BTA's disposition of the factual issues in a property valuation case, "[t]his court does not sit either as a super BTA or as a trier of fact de novo." *DAK, PLL* at ¶ 16. Where the parties present competing appraisals, the BTA has wide discretion in determining the credibility of the witnesses and weighing the evidence before it. *Westerville City Schools Bd. of Edn.* at ¶ 28. Its decision to find one appraisal more probative than another is reviewed for an abuse of discretion. *Id.* at ¶ 27.

{¶43} The "highest and best use" of a property is "[o]ne crucial element in determining the value of property in the overall market * * *." *Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St.3d 173, 2016-Ohio-371, ¶ 34. Valuing a property at its highest and best use means identifying the "reasonably probable and legal use of vacant land or an improved property that is legally permissible, physically possible, appropriately supported, financially feasible, and that results in the highest value." *Id.*, quoting Appraisal Institute, The Appraisal of Real Estate 278 (13th Ed.2008). The appraiser's determination of the highest and best use of a subject property typically influences the appraiser's subsequent choice of comparable properties in formulating an opinion of the market-exchange value of a property. *Id.* at ¶ 24-27, 34-35.

{¶44} Under this assignment of error, the Firelands BOE point to the fact that Mr. Koon's analysis concluded an alternate highest and best use of the property different from its current usage.

They argue that as a consequence, the physical possibility and maximum productivity of the subject property is "troubling."

{¶45} We again note that in choosing Mr. Koon's appraisal over Mr. Geer's, the BTA stated that because it had concluded that the subject greenhouses qualified as personal property to be excluded from the value of the real property, it found Mr. Koon's appraisal provided the more reliable evidence of the proper value of the subject property. We find no abuse of discretion in that determination. Because the greenhouses were determined to be personal property, Mr. Koon's appraisal specifically addressed the function of the property without their presence. Consequently, Mr. Koon's highest and best use analysis was necessarily different from the property's current usage. Although the Firelands BOE may disagree with Mr. Koon's analysis, they have failed to show the BTA committed error by using his appraisal. We therefore conclude that the BTA did not abuse its discretion. *See Strongsville Bd. of Edn.* at ¶ 27.

{¶46} The Firelands BOE's eighth assignment of error is overruled.

ASSIGNMENT OF ERROR NINE

THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL AND IT ABUSED ITS DISCRETION BY DISREGARDING THE TAX COMMISSIONER'S UNIFORM PROPERTY CLASSIFICATION SYSTEM GUIDANCE ON THE CLASSIFICATION OF GREENHOUSES THAT ARE AFFIXED TO PERMANENT FOUNDATIONS.

{¶47} In its ninth assignment of error, the Firelands BOE argues the BTA erred because it disregarded guidance provided in the Tax Commissioner's information releases and the Ohio Administrative Code's coding system for real property. We disagree.

{¶48} The Firelands BOE directs us to an information release by the Tax Commissioner captioned: "PP 2007-01 and RP 2007-01 - Classification of Certain Business Assets as Real or Personal Property - Issued September 2007; Revised January 2008." The release identifies its

purpose as "to provide guidance regarding the proper classification of certain business assets." It goes on to enumerate types of property to be classified as either personal property or as real property, and states that "[g]reenhouses attached to permanent foundations" should be classified as real property.

{¶49} Although we agree that this information release would seemingly apply to the greenhouses at issues, it offers little, if any, precedential value in the analysis. *See Renacci v. Testa*, 148 Ohio St.3d 470, 2016-Ohio-3394, ¶ 3, ¶ 37 (stating that a tax commissioner's information releases have "no force of law" and do "not create legal obligations by [their] own force"). Rather, we are bound to follow the precedent set by the Supreme Court of Ohio in its application of the applicable statutory sections in *Funtime*. Furthermore, "[a]n information release is not a final determination of the Tax Commissioner, as it may be subject to revision or the application of new factual scenarios producing different results." *Brown v. Levin*, 10th Dist. Franklin No. 11AP-349, 2012-Ohio-5768, ¶ 38.

{¶50} The Firelands BOE's ninth assignment of error is overruled.

ASSIGNMENT OF ERROR TEN

THE BTA ABUSED ITS DISCRETION AND ACTED UNREAONSABLY, UNLAWFULLY AND ARBITRARILY IN DETERMINING GREENHOUSES TO BE PERSONAL PROPERTY AS ITS DECISION ALLOWS PROPERTY OWNERS OF DISTINCT, BUT HIGHLY USEFUL BUILDINGS TO ESCAPE TAX LIABILITY.

{¶51} In its tenth assignment of error, the Firelands BOE argues that the BTA erred in treating the subject greenhouses as personal property because such a precedent will allow owners of distinct but highly useful buildings to escape tax liability. We disagree.

{¶52} Although the Firelands BOE speculates that this precedent of this case will allow property owners to escape tax liability in a manner not intended by the General Assembly, it has

not developed any argument nor offered any authority or evidence to support its opinion that such speculative consequences were not contemplated or intended by the General Assembly. The Firelands BOE has therefore failed to show any error by the BTA under this assignment of error.

{¶53} The tenth assignment of error is overruled.

### B. The Lorain County Appeal

{¶54} "The rules governing appellate procedure mandate that the appellant's brief must contain a statement of the assignments of error." *Easterwood v. Easterwood*, 9th Dist. Medina No. 09CA0043–M, 2010–Ohio–2149, ¶ 10, citing App.R. 16(A)(3) and Loc.R. 7(B)(3). "The appellant must then separately argue each assignment of error, including supporting authority and citations to the record." *Id.*, citing App.R. 16(A)(7) and Loc.R. 7(B)(7).

{¶55} At the outset, this Court recognizes Lorain County's failure to comply with App.R. 16(A)(7) and this Court's Loc.R. 7(B)(7). Lorain County's brief to this Court begins with a list of ten assignments of error, followed by a statement of facts. In the argument section of the brief, however, Lorain County has failed to identify and separately discuss each assignment of error as required; rather, this section is divided into three parts captioned as "Propositions of Law." In a footnote, the first Proposition of Law purports to address the first three assignments of error. Likewise, the second Proposition of Law purports to address the fourth assignment of error, while the third Proposition of Law, though consisting of a single paragraph, purports to address the fifth through tenth assignments of error.

{¶56} It is well-established that pursuant to App.R. 12(A), an appellate court may disregard an assignment of error if the party raising it fails to argue the assignment separately in the brief, as required under App.R. 16(A). *See, e.g., Ohio Edison Co. v. Williams*, 9th Dist. Summit No. 23530, 2007–Ohio–5028, ¶ 10; App.R. 12(A)(2). At times, however, this Court elected to

consider assignments of error that were not separately argued in accordance with App.R. 16(A)(7). We do so here with regard to Lorain County's first four assignments of error. Concerning the first three assignment of error discussed under the first Proposition of Law, we find that the arguments contained therein are structured in such a way that allows for reasonable analysis. Because the second Proposition of Law discusses only the fourth assignment of error, it is essentially argued separately. We further conclude, however, that the failure to argue any of the fifth through tenth assignments of error separately is fatal to those assignments. With regard to the fifth through tenth assignments of error, because Lorain County has failed to comply with the applicable rules, it has failed to meet its burden on appeal and we decline to further address those assignments of error.

{¶57} We have reordered the assignments of error for the purposes of our analysis.

### ASSIGNMENT OF ERROR TWO

THE BOARD OF TAX APPEALS' DECISION IS UNREASONABLE AND UNLAWFUL BECAUSE IT HELD THAT THE GREENHOUSES, WHICH WERE PERMANENTLY CONSTRUCTED ON AND AFFIXED TO THE LAND FOR ENHANCED UTILIZATION, ARE NOT BUILDINGS, STRUCTURES, OR IMPROVEMENTS AS DEFINED BY [R.C.] 5701.02.

{¶58} In its second assignment of error, Lorain County argues the BTA erred in concluding that the subject greenhouses are not "buildings" or "structures" pursuant to R.C. 5701.02. Lorain County's first assignment of error is analogous to the Firelands BOE's second assignment or error, raising essentially the same argument. We therefore reiterate our previous determinations.

{¶59} In *Funtime*, the Supreme Court of Ohio set forth the process of analysis of R.C. 5701.02 and R.C. 5701.03 as follows:

Reading the two statutes in pari materia and harmonizing them to give effect to the language of both statutes, we find that the correct order of application is as follows: first, determine whether the item meets the requirements of one of the definitions of real property set forth in R.C. 5701.02. If the item does not, then it is personal

property. If the item fits a definition of real property in R.C. 5701.02, it is real property unless it is "otherwise specified" in R.C. 5701.03. If an item is "otherwise specified" under R.C. 5701.03, it is personal property.

*Funtime* at ¶ 33. Accordingly, it concluded: "[E]ven if we assume that the Mind Eraser station house is a building as defined in R.C. 5701.02(B), it is 'otherwise specified' in R.C. 5701.03(B) and must be classified as a business fixture." *Id.* at ¶ 46.

{¶60} As we noted above, in accordance with *Funtime*, even if we were to agree with Lorain County that the greenhouses met the definition of "buildings," "structures," or "improvements" as defined in R.C. 5701.02(B), it would not preclude their classification as business fixtures under R.C. 5701.03(B).

{¶61} Lorain County's second assignment of error is overruled.

ASSIGNMENT OF ERROR ONE

THE BOARD OF TAX APPELAS' DECISION IS UNREASONABLE AND UNLAWFUL BECAUSE IT HELD THAT THE GREENHOUSE BUILDINGS LOCATED ON THE SUBJECT PROPERTY ARE NOT PERMANENT FABRICATIONS OR CONSTRUCTIONS PURSUANT TO [R.C.] 5701.02.

{¶62} In its first assignment of error, Lorain County argues the BTA erred because it determined that the subject greenhouses were not permanent fabrications or constructions pursuant to R.C. 5701.02. We disagree.

{¶63} Under the definitions set forth in R.C. 5701.02(B)(1), a "building" means:

*a permanent fabrication or construction*, attached or affixed to land, consisting of foundations, walls, columns, girders, beams, floors, and a roof, or some combination of these elemental parts, that is intended as a habitation or shelter for people or animals or a shelter for tangible personal property, and that has structural integrity independent of the tangible personal property, if any, it is designed to shelter.

(Emphasis added.) Likewise, under R.C. 5701.02(E):

"Structure" means *a permanent fabrication or construction*, other than a building, that is attached or affixed to land, and that increases or enhances utilization or

enjoyment of the land. "Structure" includes, but is not limited to, bridges, trestles, dams, storage silos for agricultural products, fences, and walls.

(Emphasis added.)

{¶64} It is as a part of these two definitions that the phrase "a permanent fabrication or construction" appears. The significance of the phrase is thus in its application to these definitions, and in determining whether the subject greenhouses meet these definitions. As we have repeatedly stated above, in accordance with *Funtime*, even if the subject greenhouses met the definition of "buildings" or "structure" under R.C. 5701.02(B), it would not preclude their classification as business fixtures under R.C. 5701.03(B).

{¶65} Lorain County's first assignment of error is therefore overruled.

ASSIGNMENT OF ERROR THREE

THE BOARD OF TAX APPEALS' DECISION IS UNREASONABLE AND UNLAWFUL BECAUSE IT HELD THAT THE GREENHOUSE BUILDINGS LOCATED ON THE SUBJECT PROPERTY ARE NOT REAL PROPERTY, AS DEFINED BY [R.C.] 5701.02, IN DIRECT CONTRAVENTION OF THE OHIO SUPREME COURT'S DETERMINATION IN *GREEN CIRCLE GROWERS, INC. V. LORAIN CTY. BD. OF REVISION*, 35 OHIO ST.3D 38 (1988).

{¶66} In its third assignment of error, Lorain County argues the BTA erred in finding the subject greenhouses were not real property in contravention of the Supreme Court of Ohio's determination in *Green Circle Growers, Inc. v. Lorain Cty. Bd. of Revision*, 35 Ohio St.3d 38 (1988). We disagree.

{¶67} Lorain County's argument in its third assignment of error is analogous to the argument presented in the Firelands BOE's fifth assignment of error, and our analysis remains the same. Although *Green Circle* held "that a greenhouse attached to metal pipes which are imbedded in concrete is a structure and therefore defined as real property[,]" the decision predates the amendments made to the definitions provided under R.C. 5701.02 and R.C. 5701.03. *Id.* at 40.

Because these definitions are essential to this review and were added subsequent to the *Green Circle* decision, the analysis by the *Green Circle* Court offers us little guidance. The amended definitions create a new framework for the analysis of the distinction between real property and personal property and have essentially superseded the analysis performed in *Green Circle*.

{¶68} Lorain County's third assignment of error is overruled.

ASSIGNMENT OF ERROR FOUR

THE BOARD OF TAX APPEALS' DECISION IS UNREASONABLE AND UNLAWFUL BECAUSE IT HELD THAT THE GREENHOUSE BUIILDINGS LOCATED ON THE SUBJECT PROPERTY ARE BUSINESS FIXTURES, AS DEFINED BY [R.C.] 5701.03, WHICH ARE EXCLUDED FROM THE VALUE OF REAL PROPERTY TAXATION.

{¶69} In its fourth assignment of error, Lorain County argues the BTA erred in determining that the subject greenhouses were "business fixtures." We disagree.

{¶70} Lorain County's argument under its fourth assignment of error is analogous to the argument presented under the Firelands BOE's fourth assignment of error. The argument rests on the proposition that the greenhouses are not items of tangible personal property and therefore cannot qualify as business fixtures. Lorain County points us to the BTA's administrative decision in *Polaris*, along with a Twelfth District Court of Appeals case applying the analysis set forth in *Polaris*, in support of its argument that the subject greenhouses are buildings or structures, and therefore do not constitute an item of tangible personal property. *Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, BTA No. 2004-V-1294 (Jan. 26, 2007), *rev'd on other grounds*, 118 Ohio St.3d 330, 2008-Ohio-2454; *SSN II, Ltd. v. Warren Cty. Bd. of Revision*, 12th Dist. Warren No. CA2012-04-037, 2013-Ohio-1112.

{¶71} In *Polaris*, the BTA determined that the subject amphitheater stage and facilities constituted buildings, improvements, or structures as defined by R.C. 5701.02 and were therefore

real property. *Id.* at *6. Once this determination was made, the *Polaris* decision concluded it was not necessary for the BTA to further engage in an analysis of whether the subject property was "otherwise specified" as a "business fixture" under R.C. 5701.03. *Id.* Thus, under the *Polaris* approach, if the subject greenhouses meet any of the definitions of real property under R.C. 5701.02, they cannot constitute "fixtures" or "business fixtures" and it is therefore irrelevant whether they primarily benefit the business conducted by the occupant. *Id.*

{¶72} As we have previously stated, this conclusion is inconsistent with the approach elaborated by the Supreme Court of Ohio in *Funtime*: "If the item fits a definition of real property in R.C. 5701.02, it is real property unless it is 'otherwise specified' in R.C. 5701.03. If an item is 'otherwise specified' under R.C. 5701.03, it is personal property." *Funtime* at ¶ 33. Under *Funtime*, a determination that the subject property is real property under R.C. 5701.02 is not conclusive; the property may yet be found to be "otherwise specified" under R.C. 5701.03. We are bound to follow this precedent.

{¶73} Lorain County's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR FIVE

THE BOARD OF TAX APPEALS' DECISION IS UNREASONABLE AND UNLAWFUL BECAUSE IT FOUND THAT THE PROPERTY OWNER'S APPRAISAL EVIDENCE WAS RELIABLE AND PROPER DESPITE A MULTITUDE OF ERRORS, INCONSISTENCIES, AND UNSUPPORTED ASSUMPTIONS.

ASSIGNMENT OF ERROR SIX

THE BOARD OF TAX APPEALS' DECISION IS UNREASONABLE AND UNLAWFUL BECAUSE IT ADOPTED THE ANALYSIS AND CALCUATIONS OF FUNCTIONAL AND EXTERNAL OBSOLESCENCE OF THE PROPERTY OWNER'S APPRAISER.

ASSIGNMENT OF ERROR SEVEN

THE BOARD OF TAX APPEALS' DECISION IS UNREASONABLE AND UNLAWFUL BECAUSE IT ADOPTED THE PROPERTY OWNER'S APPRAISAL REPORT, WHICH UTILIZED PROPERTIES THAT WERE COMPLETELY INCONSISTENT WITH THE PROPERTY'S HIGHEST AND BEST USE ANALYSIS.

ASSIGNMENT OF ERROR EIGHT

THE BOARD OF TAX APPEALS' DECISION IS UNREASONABLE AND UNLAWFUL BECAUSE IT DISREGARDED THE TESTIMONY OF THE CHIEF APPRIASER FOR THE LORAIN COUNTY AUDITOR.

ASSIGNMNET OF ERROR NINE

THE BOARD OF TAX APPEALS' DECISION IS UNREASONABLE AND UNLAWFUL BECAUSE IT DISREGARDED THE APPRISAL EVIDENCE OF APPELLANT'S EXPERT WITNESS, RONALD N. GEER, IN ITS ENTIRETY WITHOUT PROPERLY CONSIDERING IT.

ASSIGNMENT OF ERROR TEN

THE BOARD OF TAX APPEALS' DECISION IS UNREASONABLE AND UNLAWFUL BECAUSE ITS FINDINGS OF FACT AND CONCLUSIONS OF LAW ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶74}** As we stated above, an appellant must "separately argue each assignment of error, including supporting authority and citations to the record." *Easterwood v. Easterwood*, 9th Dist. Medina No. 09CA0043–M, 2010–Ohio–2149, ¶ 10, citing App.R. 16(A)(7) and Loc.R. 7(B)(7). Lorain County has failed to comply with App.R. 16(A)(7) and this Court's Loc.R. 7(B)(7) because it has failed to identify and separately discuss each assignment of error as required. Lorain County's brief to this Court begins with a list of ten assignments of error, followed by a statement of facts. The argument section is divided into three sections captioned as "Propositions of Law." Under the third Proposition of Law, Lorain County purports to address the fifth through tenth assignments of error in a single paragraph.

**{¶75}** It is well-established that pursuant to App.R. 12(A), an appellate court may disregard an assignment of error if the party raising it fails to argue the assignment separately in the brief, as required under App.R. 16(A). *See, e.g., Ohio Edison Co. v. Williams*, 9th Dist. Summit No. 23530, 2007–Ohio–5028, ¶ 10; App.R. 12(A)(2). Lorain County's failure to argue the fifth through the tenth assignments of error separately is fatal to those assignments. Because Lorain County has failed to comply with the applicable rules, we conclude it has failed to meet its burden on appeal and decline to further address the fifth through tenth assignments of error.

**{¶76}** Lorain County's fifth, sixth, seventh, eighth, ninth, and tenth assignments of error are therefore overruled.

III.

**{¶77}** The Firelands BOE's assignments of error are overruled. Lorain County's assignments of error are overruled. The decision of the Ohio Board of Tax Appeals is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Ohio Board of Tax Appeals, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, J.
DISSENTING.

{¶78} I respectfully dissent from the judgment of the majority as I would conclude that the BTA erred in its classification of the greenhouses as business fixtures. Given that conclusion, I would remand the matter to the BTA for it to examine the appraisal evidence in light of that determination.

{¶79} Despite the numerous assignments of error before the Court, the matter centers on two issues: the characterization of the greenhouses as either real or personal property and their appraised value.

{¶80} Pursuant to R.C. 5701.02(A),

"Real property," "realty," and "land" include land itself, whether laid out in town lots or otherwise, all growing crops, including deciduous and evergreen trees, plants, and shrubs, with all things contained therein, and, unless otherwise specified in this section or section 5701.03 of the Revised Code, all buildings, structures, improvements, and fixtures of whatever kind on the land, and all rights and privileges belonging or appertaining thereto.

A building is defined as "a permanent fabrication or construction, attached or affixed to land, consisting of foundations, walls, columns, girders, beams, floors, and a roof, or some combination of these elemental parts, that is intended as a habitation or shelter for people or animals or a shelter for tangible personal property, and that has structural integrity independent of the tangible personal property, if any, it is designed to shelter." R.C. 5701.02(B)(1). Whereas a fixture "means an item of tangible personal property that has become permanently attached or affixed to the land or to a building, structure, or improvement, and that primarily benefits the realty and not the business, if any, conducted by the occupant on the premises." R.C. 5701.02(C). A structure is defined as "a permanent fabrication or construction, other than a building, that is attached or affixed to land, and that increases or enhances utilization or enjoyment of the land. 'Structure' includes, but is not limited to, bridges, trestles, dams, storage silos for agricultural products, fences, and walls." R.C. 5701.02(E). Thus, "[t]he definition of 'structure' set forth in R.C. 5701.02(E) requires (1) a permanent fabrication or construction other than a building that is attached or affixed to land and (2) increased utilization or enjoyment of the land as a result." *Funtime, Inc. v. Wilkins*, 105 Ohio St.3d 74, 2004-Ohio-6890, ¶ 34.

{¶81} Whereas personal property

includes every tangible thing that is the subject of ownership, whether animate or inanimate, including a business fixture, and that does not constitute real property as defined in section 5701.02 of the Revised Code. "Personal property" also includes every share, portion, right, or interest, either legal or equitable, in and to every ship, vessel, or boat, used or designed to be used in business either exclusively or partially in navigating any of the waters within or bordering on this state, whether such ship, vessel, or boat is within the jurisdiction of this state or elsewhere. "Personal property" does not include money as defined in section 5701.04 of the Revised Code, motor vehicles registered by the owner thereof, electricity, or, for purposes of any tax levied on personal property, patterns, jigs, dies, or drawings that are held for use and not for sale in the ordinary course of business, except to the extent that the value of the electricity, patterns, jigs, dies, or drawings is included in the valuation of inventory produced for sale.

R.C. 5701.03(A).

{¶82}  A business fixture

means an item of tangible personal property that has become permanently attached or affixed to the land or to a building, structure, or improvement, and that primarily benefits the business conducted by the occupant on the premises and not the realty. "Business fixture" includes, but is not limited to, machinery, equipment, signs, storage bins and tanks, whether above or below ground, and broadcasting, transportation, transmission, and distribution systems, whether above or below ground.  "Business fixture" also means those portions of buildings, structures, and improvements that are specially designed, constructed, and used for the business conducted in the building, structure, or improvement, including, but not limited to, foundations and supports for machinery and equipment. "Business fixture" does not include fixtures that are common to buildings, including, but not limited to, heating, ventilation, and air conditioning systems primarily used to control the environment for people or animals, tanks, towers, and lines for potable water or water for fire control, electrical and communication lines, and other fixtures that primarily benefit the realty and not the business conducted by the occupant on the premises.

R.C. 5701.03(B).

{¶83}  The Supreme Court analyzed these provisions in *Funtime, Inc*.  The Supreme Court concluded that, in "[r]eading the two statutes in pari materia and harmonizing them to give effect to the language of both statutes, * * * the correct order of application is as follows: first, determine whether the item meets the requirements of one of the definitions of real property set forth in R.C. 5701.02.  If the item does not, then it is personal property.  If the item fits a definition of real property in R.C. 5701.02, it is real property unless it is 'otherwise specified' in R.C. 5701.03.  If an item is 'otherwise specified' under R.C. 5701.03, it is personal property."  *Id.* at ¶ 33.

{¶84}  The BTA examined the issues raised in *Funtime, Inc.* in *Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, BTA No. 2004-V-1294, 2007 WL 283010 (Jan. 26, 2007), rev'd on other grounds, 118 Ohio St.3d 330, 2008-Ohio-2454.  In concluding that the buildings, improvements, and structures on the property at issue should not be classified as business fixtures, the BTA noted that they failed to constitute items of personal property under

R.C. 5701.03(B). *See id.* at \*5-6. In addition, the BTA observed that "[t]he distinction between real property and personal property does not hinge upon the singular distinction of whether property is used in business or a commercial venture. Rather, only the distinction of whether an item of personal property constitutes a 'fixture' under R.C. 5701.02(C) and is therefore defined as real property, or whether an item of personal property constitutes a 'business fixture' under R.C. 5701.03(B) and is therefore defined as personal property does hinge upon the determination of whether the item of personal property is used in business." *Id.* at \*6.

{¶85} The facts before this Court support the conclusion that the greenhouses are structures or buildings. The greenhouses are massive units that together span over 100 acres of land. They are used year-round. The greenhouses are attached by steel support posts connected to footers that are embedded in concrete foundations. The completed greenhouses consist of walls, doors, windows, support posts, insulation, concrete floors, and a roof. The greenhouses include heating and air conditioning systems. The newer greenhouses include lighting, electricity, plumbing, ventilation, drainage, and an irrigation system. Some of the greenhouses were constructed over 40 years ago and continue to be maintained and used. Accordingly, routine maintenance and repairs are performed on the greenhouses. The greenhouses are enmeshed in the land as they are interwoven with other building such as warehouses and office buildings. Moreover, the greenhouses also undoubtedly increase utilization or enjoyment of the land. R.C. 5701.02(E).

{¶78} Because a building or structure by definition cannot be personal property, *see* R.C. 5701.02-.03, and a business fixture is personal property, *see* R.C. 5701.03(B), it is unclear why the Supreme Court in *Funtime, Inc.* indicated that, even if property is classified as a building or structure under R.C. 5701.02, it still must be reviewed to determine whether it qualifies as a

business fixture under R.C. 5701.03(B). *See Funtime, Inc.*, 105 Ohio St.3d 74, 2004-Ohio-6890, at ¶ 31-33. Nonetheless, because *Funtime, Inc.* is controlling precedent, it is necessary to examine whether the greenhouses qualify as business fixtures under R.C. 5701.03(B).

**{¶79}** The greenhouses do not qualify as business fixtures. First, the greenhouses are not personal property as discussed above. *See* R.C. 5701.03(A). This is so because they are real property, as they are structures or buildings. *See* R.C. 5701.02(A), (B)(1), (E). However, even if it were to be assumed that the greenhouses were personal property, the greenhouses primarily benefit the land/realty, and, thus, are not business fixtures. *See* R.C. 5701.03(B). The overall use of the land is for commercial agriculture and the use of the greenhouses extends the growing season thereby benefiting the land. Further, there are tax benefits associated with the agricultural use of the land which is increased by the use of the greenhouses.

**{¶80}** Accordingly, I would conclude that the BTA erred in concluding that the greenhouses were business fixtures, and, thus, personal property. In light of this determination, I would remand the matter to the BTA for it to reevaluate the appraisals given that the greenhouses are structures or buildings and therefore real property.

APPEARANCES:

J. D. TOMLINSON, Prosecuting Attorney, and CARA M. FINNEGAN, Assistant Prosecuting Attorney, for Appellants.

KELLY A. GORRY, Attorney at Law, for Appellants.

KARRIE M. KALAIL, Attorney at Law, for Appellant.

JONATHAN T. BROLIER, BRYAN M. SMEENK, and TESS G. TANNEHILL, Attorneys at Law, for Appellees.